Juanita N. GRAY, Plaintiff-Respondent,

v.

Russel EGGERT, Milwaukee Transport Services, Inc. and Milwaukee County Inc., Defendants-Appellants.

Court of Appeals

*No. 01–0007. Submitted on briefs August 9, 2001.—Decided September 5, 2001.*

2001 WI App 246

(Also reported in 635 N.W.2d 667.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Richard J. Krill* of *Gonzalez, Saggio & Harlan, L.L.P.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Ronald Bornstein* of *Bornstein Law Offices, S.C.*, of Milwaukee.

Before Fine, Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Russel Eggert, Milwaukee Transport Services, Inc., and Milwaukee County Inc. (collectively, "Milwaukee Transport") appeal from the trial court judgment awarding Juanita N. Gray $5000, plus taxable costs, as a sanction for what the court perceived as Milwaukee Transport's failure to comply with a scheduling order. The trial court concluded that Milwaukee Transport had violated the order by not making a good-faith effort to settle the case. We reverse.

## I. BACKGROUND

¶ 2. On April 7, 1998, Gray was driving a school bus that collided with a county bus Eggert was driving. Alleging that she had sustained injuries as a result of the collision, Gray sued Milwaukee Transport and claimed that she had incurred medical expenses of approximately $1419 and a wage loss of less than $150. Milwaukee Transport denied liability and contended that Gray "was negligent and failed to use reasonable care" and that her injuries, if any, resulted from her negligence.

¶ 3. The trial court issued a scheduling order requiring that "[t]he parties shall complete mediation no later than [January 17,] 2000."[1] The parties participated in mediation on January 4, 2000, but reached no resolution.

¶ 4. On July 26, 2000, the date set for trial, the trial court, in a chambers conference the court subsequently summarized on the record, learned that Milwaukee Transport had offered no financial settlement. Milwaukee Transport had offered nothing because, it maintained, Gray had driven her school bus into the county bus while it was "standing still" and, therefore, Milwaukee Transport believed it had "absolutely no liability." The trial court instructed the parties to attempt further negotiation. Apparently, counsel then conferred and advised the trial court that Milwaukee Transport would settle the case for $100, and that Gray had offered to settle for $5000.

---

[1] The order was issued by the Honorable Diane S. Sykes, who then was a circuit court judge. The subsequent proceedings at issue in this appeal were before Judge Dominic S. Amato.

¶ 5. Thus advised that the parties had been unable to resolve the case, the court expressed its frustration, commenting, in part:

> There was mention about a mediation, but there was no mention about sitting down and trying to resolve and settle the case in good faith. And when defense counsel says they've offered zero, zero means zero, so the mediation process that existed was a sham or perfunctory.

> I then called the lawyers' attention to the scheduling order [which states, in part,] that ["]counsel are expected to confer and make a good faith effort to settle the case[."]

> There was no good faith effort to settle the case as of a few minutes before 9:00 . . . this morning.

> Defense counsel, upon my inquiry, advised me who was in the position of authority to settle the case. . . . I indicated that he should call his client and make a good faith offer . . . to settle the case, and confer and settle the case, as ordered by Diane Sykes, who is now on the Wisconsin State Supreme Court.

> I then indicated that when that offer in good faith is conferred back to the court . . ., I expect [plaintiff's counsel] to make a good faith offer in response.

> . . . .

> It's 9:15. The response I get from [defense counsel] is a hundred dollars. That is not done in good faith.

> The court imposes the sanctions under the scheduling order for failure of defense counsel to confer with plaintiff in an effort to settle this case in good faith.

¶ 6. The court then invoked portions of the scheduling order, providing in relevant part: "**[C]ounsel are**

**expected to confer and make good faith effort to settle the case. . . . FAILURE TO COMPLY WITH THE TERMS OF THIS ORDER SHALL BE CONSIDERED CAUSE FOR IMPOSING SANCTIONS WHICH MAY INCLUDE THE DISMISSAL OF CLAIMS AND DEFENSES.** See § 804.12 and 805.03 Wis. Stats."[2] (Footnote added.) The trial court concluded: "For failure to comply in good faith with the scheduling order to sit and confer and try to settle the case in good faith, the court strikes the answer and responsive pleadings of the defendant, [and] enters judgment in favor of the plaintiff in the amount of five thousand dollars."

¶ 7. The next day, Milwaukee Transport moved for reconsideration. Counsel for Milwaukee Transport argued, "With all due respect, the defendants find it difficult to believe that it is just for the court to find that [they acted] in bad faith for offering only a nominal amount to settle a matter which the defendants view as a case of no liability." Counsel for Milwaukee Transport elaborated the evidentiary basis for his position, and further maintained:

> Defendants do not believe its offering a nominal amount to settle a case of this nature can qualify as bad faith. Defendants believe that no defendant should be forced to pay money under such circumstances, but it is particularly true that Milwaukee County Trans[por]t, as an arm of Milwaukee County, should not be required to pay every plaintiff who files suit. Due to the size of its operations, Milwaukee County Trans[por]t is a major target for litigation. It is constantly dealing with claims of questionable merit. The mentality already exists in this community that you can always sue the bus

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

> company. This philosophy could only be reinforced by a ruling that seems to require Milwaukee County Trans[por]t to pay substantial sums to every plaintiff.
>
> Milwaukee County Trans[por]t regularly settles cases of this sort for one hundred dollars. Present counsel settled a case for Milwaukee County Trans[por]t for exactly one hundred dollars in early May of this year in the course of a mediation conducted by the same mediator who conducted mediation in the case at bar on similar facts.

Counsel then further challenged the trial court's sanction because it "seems not to be consistent with the spirit of alternative dispute resolution embodied in [WIS. STAT. §] 802.12."

¶ 8. The trial court, rejecting Milwaukee Transport's motion for reconsideration, reiterated the previous day's basis for its ruling, and added that it also had been influenced by the demeanor of Milwaukee Transport's counsel:

> [Y]our non-verbal communication, and the way that you expressed the hundred dollars, reminded me of the smiling cheshire cat in Alice in Wonderland, and was said in a very cocky way, and there was nothing to demonstrate by your demeanor that you were at all sincere, and there was nothing to suggest at any point in time that you sat and tried to confer in good faith to reach a settlement. . . . [T]here was nothing at all to demonstrate by your conduct, your non-verbal communications, your demeanor and your language that you were acting in good faith to try to settle the case. No one was ordering you to do it, but you weren't even trying. The clear inference given is that you were playing a game. Form you were giving me without substance. And if these scheduling orders are to have any meaning, they're going to be enforced.

. . . .

So the reason I struck your pleading was not [to] attempt to deny your client its constitutional protections, it was done because of the disregard, egregious act of not making any effort to sit down and confer with [plaintiff's counsel] in good faith to try to reach settlement of this case. . . .

## II. DISCUSSION

¶ 9. WISCONSIN STAT. § 805.03 provides a trial court with the discretionary authority to strike the answer and responsive pleadings of a defendant and enter judgment for the plaintiff as a sanction for the defendant's failure to comply with any order of the court.[3] We will affirm a trial court's discretionary decision if the trial court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable [court] could reach." *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). Here, we conclude that the trial court incorrectly assumed facts about the mediation process, applied improper legal standards, and failed to reach a reasonable conclusion.

¶ 10. Under WIS. STAT. § 802.12(2), a trial court has authority to order parties in civil litigation to attempt mediation or other settlement processes to resolve a case. *Leverence v. PFS Corp.*, 193 Wis. 2d 317, 329–30, 532 N.W.2d 735 (1995). Section 802.12(1)(e) explains:

---

[3] WISCONSIN STAT. § 805.03 states, in relevant part: "[F]or failure of any party . . . to obey any order of court, the court . . . may make such orders in regard to the failure as are just. . . ."

"Mediation" means a dispute resolution process in which a neutral 3rd person, who has no power to impose a decision if all of the parties do not agree to settle the case, helps the parties reach an agreement by focusing on the key issues in a case, exchanging information between the parties and exploring options for settlement.

Nowhere, however, does § 802.12 provide a court the authority to require resolution.

¶ 11. Moreover, while the mediation process will often depend on the parties' good faith and open-minded flexibility, it does not require any party to abandon a legal position or settle a case. *See Leverence*, 193 Wis. 2d at 330 ("[T]he parties themselves must agree to the process, one which is entirely within the parties' control because it cannot proceed without their consent."). Indeed, as a skillful mediation process facilitates the "exchanging [of] information between the parties," *see* WIS. STAT. § 802.12(1)(e), it can lead a party to recognize important facts that establish the merits of its position, thus strengthening the resolve to press forward with litigation. By the same token, of course, mediation can also help a party to realistically review a case, leading to a settlement.

¶ 12. Thus a trial court, not present at mediation, is unlikely to appreciate all that took place there and, as a result, may not understand whether the parties mediated in "good faith." Moreover, a trial court that equates "good faith" with the fact or amount of settlement offers, or with the success of the parties in reaching resolution, may fail to recognize that sometimes mediation exposes that a case is not "about money," but rather, is about issues not neatly resolved in a formal legal setting.

¶ 13. Accordingly, while mediation can be an invaluable process, its parameters must be understood and respected. *See* Eva Soeka & James Fullin, *The New ADR Referral Statute: Resolving Conflicts Outside Wisconsin Courtrooms,* 67 WIS. LAW. 12, 15 (1994) (WISCONSIN STAT. § 802.12, the alternative-dispute-resolution-referral statute, "does not require the parties to participate in settlement efforts in good faith, nor permit the court to sanction or otherwise burden any party for insisting on trial."). Therefore, enlightened trial courts will creatively and energetically explore the opportunities for mediation and other forms of alternative dispute resolution under WIS. STAT. § 802.12. They will also understand, however, that certain parties may not be ready, willing, or able—to give much ground or mediate effectively—and that mediation simply cannot resolve all cases.

¶ 14. In this case, when the trial court commented that "[t]here was mention about a mediation, but there was no mention about sitting down and trying to resolve and settle the case in good faith," the court had no factual basis for reaching any conclusion about whether Gray or Milwaukee Transport had mediated in good faith. And when the trial court commented that "when defense counsel says they've offered zero, zero means zero, so the mediation process that existed was a sham or perfunctory," the court revealed its misunderstanding of the mediation process. After all, in some cases, depending on the information exchanged and the parties' positions, successful mediation may produce recognition that "zero" is a fair result. Clearly, therefore, it is error for a court to conclude, based on an offer of zero, that the mediation process "was a sham or perfunctory."

¶ 15. Thus, when Gray and Milwaukee Transport arrived in court for their trial, nothing yet established any violation of the scheduling order. Simply stated, the parties had complied with the order for mediation, but mediation had not produced a settlement. At that point, the court, understandably, instructed the parties to make one last effort to reach resolution. But the court had no authority to require resolution or to sanction either party for failing to agree.

¶ 16. As the supreme court explained in *Klitzke v. Herm*, 242 Wis. 456, 8 N.W.2d 400 (1943), a trial court "may suggest figures, [it] may give [its] views but it is not the part of wisdom to undertake to force counsel to make settlement against his [or her] will." *Id.* at 461. Moreover, the trial court "should make it clear to counsel that [it] realizes that they are entitled to their day in court and are not to feel the slightest hesitancy in disagreeing with the views [it] expresse[s]." *Id.* Accordingly, trial courts "should not be too persistent about a settlement." *Id.* Here, unquestionably, the trial court broke through the *Klitzke* restraints.

¶ 17. Striking a defendant's pleadings and entering judgment for a plaintiff as a sanction for noncompliance with pretrial orders may be appropriate in the case of egregious conduct by a defendant who acts in bad faith. *See Englewood Cmty. Apartments Ltd. P'ship v. Alexander Grant & Co.*, 119 Wis. 2d 34, 40, 349 N.W.2d 716 (Ct. App. 1984); *Furrenes v. Ford Motor Co.*, 79 Wis. 2d 260, 268, 255 N.W.2d 511 (1977). "Bad faith" has been defined as " '[d]eceit; duplicity; insincerity.' " *Anderson v. Cont'l Ins. Co.*, 85 Wis. 2d 675, 691–92, 271 N.W.2d 368 (1978). Here, however, the record does not establish any bad faith or egregious conduct by Milwau-

kee Transport. The record does not establish any violation of the scheduling order.[4]

¶ 18. "The right of trial by jury shall remain inviolate,[5] and shall extend to all cases at law without regard to the amount in controversy. . . ." WIS. CONST. art. I, § 5 (footnote added). Milwaukee Transport is entitled to a jury trial.

*By the Court.*—Judgment reversed.

[4] If something in the conduct or demeanor of defense counsel merited discipline, the court failed to mention it when it first sanctioned Milwaukee Transport. Its belated references the next day did not establish a basis for the severe sanction imposed.

[5] "Inviolate" means "[f]ree from violation; not broken, infringed, or impaired." BLACK'S LAW DICTIONARY 832 (7th ed. 1999).