Debra STOEHR, Appellant–Defendant,

v.

Carolyn YOST and Robert Yost, Appellees–Plaintiffs.

No. 49A05–0108–CV–343.

Court of Appeals of Indiana.

April 2, 2002.

---

**3.** Now Indiana Code § 31–14–4–2 (1998).

**4.** Now Ind.Code § 31–14–5–3 (1998).

Kenneth M. Wahnsiedler, State Farm Litigation Counsel, Indianapolis, IN, Attorney for Appellant.

Jordan D. Church, Church, Church, Hittle & Antrim, Noblesville, IN, Attorney for Appellees.

Gregory H. Miller, Crawfordsville, IN, Attorney for Amicus Curiae Indiana Trial Lawyers Association.

## OPINION

VAIDIK, Judge.

### Case Summary

Debra Stoehr appeals the trial court's sanction against her insurer, State Farm Mutual Automobile Insurance Company (State Farm), for failing to mediate in good faith. In particular, Stoehr contends that the trial court abused its discretion when it awarded fees and costs to Carolyn and Robert Yost for the alleged bad faith in the mediation by State Farm. Because we find that State Farm did not act in bad faith, we reverse.

### Facts and Procedural History

The underlying dispute involved in this appeal is a motor vehicle/pedestrian accident that occurred in May of 1996, which the Yosts claim resulted in a fracture of Carolyn's left leg and soft-tissue damage to her lower back, neck, and shoulders. Stoehr struck Carolyn with her vehicle as she was attempting to cross Washington Street in downtown Indianapolis. It is undisputed that at the time Carolyn was crossing the street the automatic traffic signal turned from red to green. Moreover, two witnesses indicated that Carolyn was crossing the street against the light and that Stoehr would have had difficulty seeing her because of the presence of vehicles in the other four lanes of Washington Street.

An ambulance transported Carolyn to Methodist Hospital for evaluation. No x-rays were taken, and no confirmation of a fracture was made. Based on the advice of the emergency room doctor, Carolyn followed up with her family physician. Carolyn's family physician did not order any x-rays of her left leg. Carolyn did not seek any further medical attention until approximately fourteen months after the accident, at which time she sought treatment from a chiropractor. Three months later, Carolyn scheduled a visit with an orthopedic surgeon due to problems she encountered when walking and discomfort in her left leg. The orthopedic surgeon performed an exam and took x-rays, which

revealed a healed fracture of the fibula of her left leg.

The Yosts filed a complaint for damages and request for trial by jury in April of 1998, which alleged that Stoehr was negligent in the operation of her automobile and that, as a result, Carolyn sustained personal injuries. The Yosts also made claims on behalf of Robert for the loss of services, society, companionship, and consortium of Carolyn. Stoehr responded with an answer in the form of a general denial.

In April of 1999, Stoehr's counsel sent a letter to the Yosts' counsel that stated, "[a]s this case is pending in Marion County and we will be required to mediate the case prior to trial, I would like to schedule a mediation as soon as possible." Appellant's App. p. 92. Due to scheduling conflicts, the parties were unable to schedule the mediation prior to the previously set trial date. Thus, Stoehr moved the court for a continuance, which the trial court granted.

When counsel for Stoehr arrived at the mediation, he informed the mediator that based on the facts of the case he did not believe his client was liable, he questioned the claimed damages, and therefore, he did not intend to offer the Yosts any money to settle their claim. While Stoehr's counsel expressed a willingness to go forward with the mediation and possibly change his position depending on what the Yosts had to say, counsel for the Yosts elected to terminate the mediation upon learning that State Farm would not be making a settlement offer.

Subsequently, the Yosts filed a Petition for Fees and Costs, which alleged that State Farm acted in bad faith by failing to authorize Stoehr's counsel to settle the case. The trial court granted the Petition, but it deferred an award of sanctions pending an evidentiary hearing.[1] Meanwhile, the case was tried to a jury, which returned a defense verdict. Immediately following the trial, the court conducted an evidentiary hearing regarding the Yosts' Petition for Fees and Costs. At this hearing, Stoehr's counsel requested that the trial court reconsider its prior ruling granting the Yosts' Petition. Subsequently, the trial court vacated its previous Order granting the Yosts' Petition and scheduled the matter for a hearing de novo. Following a hearing on the matter, the trial court found that State Farm had acted in bad faith and ordered Stoehr to pay the Yosts' costs and attorney's fees in the amount of $2,139.75. This appeal ensued.

### Discussion and Decision

■ When reviewing a case involving a sanction against one party made at the request of the opposing party, we apply an abuse of discretion standard. *State v. Carter*, 658 N.E.2d 618, 621 (Ind.Ct.App. 1995). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law. *Nyby v. Waste Mgmt., Inc.*, 725 N.E.2d 905, 915 (Ind.Ct.App.2000).

■ Stoehr argues that the trial court abused its discretion when it awarded sanctions to the Yosts for its alleged bad faith in the mediation of the underlying dispute. In particular, Stoehr asserts that the trial court abused its discretion by

---

1. The Honorable Steven Frank presided over the initial hearing on the Yosts' Petition for Fees and Costs, which was held off the record. However, following the Marion County election, the Honorable S.K. Reid became the new judge in Marion County Superior Court 13, replacing Judge Frank. Thus, she presided over both the jury trial and the subsequent hearings regarding the Yosts' Petition.

sanctioning State Farm for mediating in bad faith when the Yosts failed to provide the trial court with evidence that State Farm engaged in conscious wrongdoing for dishonest purposes or that State Farm proposed mediation with surreptitious or malevolent intent.

Conversely, the Yosts claim that the trial court did not abuse its discretion by sanctioning State Farm. The Yosts contend that State Farm acted in bad faith, and thus, the trial court properly imposed sanctions under Indiana Alternative Dispute Resolution (A.D.R.) Rule 2.10. Specifically, the Yosts maintain that State Farm's conduct in inducing the Yosts to mediate, when it had no intention of participating, was bad faith. Moreover, the Yosts allege that in spite of the mediator's specific instructions, State Farm did not have someone at the mediation with settlement authority and that State Farm was unwilling to *"really* listen." Appellee's Br. p. 8 (quoting Mediator's letter of June 7, 1999, Appellant's App. p. 100) (emphasis in original).

The Indiana Trial Lawyers Association (ITLA) adopted a similar position in its amicus brief. ITLA filed a brief advocating the position that the trial court properly imposed sanctions against State Farm for failing to mediate in good faith. ITLA alleges that State Farm acted in bad faith by continuing the trial date under false pretenses, by failing to materially participate in the mediation process, and by failing to timely notify the Yosts' counsel that it had no intention of ever making a settlement offer. Additionally, ITLA argues that the jury verdict in Stoehr's favor should have no effect on our determination as to whether the trial court abused its

discretion by imposing sanctions against State Farm.[2]

Initially, we recognize that:

> A trial court, not present at the mediation, is unlikely to appreciate all that took place there and, as a result, may not understand whether the parties mediated in "good faith." Moreover, a trial court that equates "good faith" with the fact or amount of settlement offers, or with the success of the parties in reaching resolution, may fail to recognize that sometimes mediation exposes that a case is not "about money," but rather, is about issues not neatly resolved in a formal legal setting.

*Gray v. Eggert,* 248 Wis.2d 99, 635 N.W.2d 667, 671 (Ct.App.2001). Because the trial court is not present at the mediation and, therefore, unlikely to appreciate all that took place there, it is vital that parties alleging that an opposing party failed to mediate in good faith are able to provide the trial court with some evidence beyond bald assertions of bad faith. *See Carter,* 658 N.E.2d at 621–22 (positing "[s]ince a bad faith determination inherently includes an element of culpability, a finding of bad faith should require more than the unsubstantiated allegations of an adverse party"). The Yosts fail to provide us with any such evidence.

In the context of mediation, we have previously defined bad faith as follows:

> Bad faith amounts to more than bad judgment or negligence; "[r]ather it implies the conscious doing of wrong because of dishonest purpose or moral obliquity.... [I]t contemplates a state of mind affirmatively operating with furtive design or ill will."

---

**2.** For purposes of our discussion, we summarily agree with the ITLA on this point and therefore, do not consider the fact that the jury returned a defense verdict in reaching our decision.

*Id.* at 621 (citations omitted).[3] Despite the Yosts' and ITLA's allegations to the contrary, we fail to conclude that State Farm acted in bad faith.

Both the Yosts and ITLA allege that State Farm engaged in bad faith by inducing the Yosts to mediate the case and continuing the trial date to accommodate the mediation session. However, the Marion County Local Rules require mandatory mediation of certain cases. In particular, Local Rule 16.3(C) provides:

> 1. *Civil jury trials.* All cases where a timely demand for jury trial is made, mediation pursuant to A.D.R. Rule 2 is mandatory. Mediation is to be completed sixty (60) days prior to trial, unless the mediation referral is vacated for good cause shown. Objections to mediation may be made within fifteen (15) days of the completion of the case management conference required by Rule 16.1(A).[4]

The Yosts argue that if State Farm had no intention of making an offer of settlement, it should have filed an objection to mediation. However, the trial court highlights in its Order that:

> 4. "Settlement of the whole case is not the only goal of mediation; 'agreement' is another goal, whether it be a factual stipulation, an agreement to forego jury trial in favor of binding arbitration, an identification of issues, a reduction of misunderstandings, a clarification of priorities, or a location of points of agreement. Thus, even where the odds of resolution are slim, mediation can be beneficial because other goals might be achieved." *State v. Carter,* 658 N.E.2d 618, 623 (Ind.Ct.App.1995).[5]

Appellant's App. p. 53. In light of this statement, it becomes apparent that even if State Farm had no intention of offering

---

**3.** We found the definition of bad faith set forth in *Carter* to be of limited assistance. Likewise, our review of cases from other jurisdictions revealed equally nebulous descriptions of bad faith. Thus, to provide some guidance to practitioners as to what is expected of them by A.D.R. Rule 2.1's mandate that they "mediate in good faith," we recommend that a more objective approach to determining good faith be adopted. *See, e.g.,* Ind.Code § 26–1–2–103(b) (defining "good faith" objectively under Indiana's Commercial Code as "honesty in fact and observance of reasonable commercial standards of fair dealing in the trade"); Ind. Trial Rule 16 (imposing sanctions if no appearance is made on behalf of a party at a pre-trial conference or if an attorney is grossly unprepared to participate). By implementing an objective approach to determining good faith in mediation, it is possible to decrease the chance that subsequent litigation, which undermines the economy and efficiency of mediation, will result when a party is dissatisfied with the outcome of the mediation and therefore claims that the other party failed to mediate in good faith.

**4.** We caution against the use of mediation solely for the purpose of docket control because such a utilization eviscerates the primary purpose of mediation—efficient and

cost-effective settlement of disputes. Instead, we advocate a system in which cases are individually assessed for suitability for mediation since sending a case to mediation could be a futile exercise and result in unnecessary expenses for the parties if the case is inappropriate for mediation. In determining whether a case is appropriate for mediation, a court should assess the likelihood that parties could reach a settlement, make factual stipulations, agree to forego a jury trial in favor of binding arbitration, identify issues, reduce their misunderstandings, clarify their priorities, or locate points of agreement.

**5.** Because the chance of effectuating many of these ancillary goals is greater when mediation takes place earlier in the litigation process rather than later, we suggest that parties attempt to mediate earlier to fully realize the benefits of mediation. However, we urge parties to conduct at least limited discovery prior to mediating so that they have an enhanced understanding of the liability and damages involved in the case, and therefore, they are better able to make informed decisions as to which issues, if any, can be conceded.

to settle the dispute for a certain dollar amount, there are still several valid reasons why State Farm could have sought to mediate the case, rather than try to avoid the mandate of Marion County Local Rule 16.3(C)(1). In fact, State Farm's counsel adopted the position that:

[A]lthough we were not going to make an offer at that point and time, we were certainly willing to listen to what they had to say. We were prepared to go forward with the mediation as far as listening to what they had to say, and depending upon what they had to say, I could always go back and see if they might be willing to make some offer.

Appellant's App. p. 83–84.

Because mediation is not all "about money," we cannot conclude that State Farm's behavior in suggesting that a mediation be scheduled in accordance with local rules amounted to bad faith. Neither can we say that State Farm, through Stoehr, acted in bad faith by seeking a continuance of the trial.

The mediator asked counsel for both sides to submit calendars for May, June, July, and August 1999, which identified dates that the parties would be unavailable to participate in mediation. After reviewing the calendars submitted by both sides, as well as his own calendar, the mediator was unable to find a mutually agreeable date for the mediation within those months. Thus, he requested that the parties submit calendars for the months of September, October, and November of 1999. At this point, the mediator selected the afternoon of September 21, 1999, for the mediation. Because the trial had previously been set for August 24, 1999, Stoehr moved for a continuance. The record does not reveal that State Farm maliciously manipulated this process in any way. Rather, all the record discloses is that Stoehr's counsel notified the Yosts'

counsel—whose practice is located in Hamilton County—of the Marion County Local Rule regarding mediation of civil jury trial cases, submitted calendars as requested by the mediator, and moved to continue the trial because the parties were unable to find an open date for the mediation prior to when the trial was scheduled to take place. None of these actions demonstrate furtive design or ill will.

Further, we reject the Yosts' contention that State Farm did not have someone at the mediation with settlement authority. Our review of the record shows that State Farm not only sent counsel to the mediation but also sent a claims adjuster. The claims adjuster was in a position to advise State Farm to change its stance and settle the case if the Yosts' argument at mediation merited such action. However, the Yosts foreclosed this opportunity by refusing to go forward with the mediation once they found out that State Farm's initial inclination was to not offer them any dollar amount to settle the case due to the disputed liability and damages involved. Even if State Farm was not persuaded by the Yosts' presentation, the other goals of mediation, such as factual stipulations, identification of issues, reduction of misunderstandings, clarification of priorities, and location of points of agreement, could have been realized but for the Yosts' decision to terminate the mediation.

■ Finally, in response to ITLA's argument that State Farm acted in bad faith by failing to timely notify the Yosts that it did not intend to offer them any money to settle their claim, we note that neither the A.D.R. Rules nor the Marion County Local Rules require counsel to notify an opposing party of its intention to not offer any dollar amount to settle a case prior to mediation. While some attorneys may do this as a courtesy, it is not required. Because mediation is aimed at accomplishing

more than just reaching a settlement, we do not find that it was bad faith for State Farm to wait until the start of the mediation to notify the Yosts that it did not intend to offer them a money settlement on their claim. However, this is not to say that a party could not be found to have engaged in bad faith by failing to offer a settlement amount if there exists other evidence of dishonest purpose or moral obliquity.

In conclusion, we find that the record is devoid of evidence indicating that State Farm acted with dishonest purpose and moral obliquity. While A.D.R. Rule 2.1 requires parties to come to mediation willing to mediate in good faith, the rules do not require parties to reach a settlement. Because we find the evidence insufficient to support a finding of bad faith by State Farm, we find that the trial court abused its discretion in sanctioning State Farm.

Judgment reversed.

BAKER, J., and BARNES, J., concur.