

I N  T H E

# Court of Appeals of Indiana

Vince Caccavale,

*Appellant-Defendant/Cross-Appellee*

v.

Ranger Team Building, LLC,

*Appellee-Plaintiff/Cross-Appellant*



FILED

Oct 11 2024, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

October 11, 2024

Court of Appeals Case No.
23A-PL-1556

Appeal from the Lake Superior Court

The Honorable Rehana Adat-Lopez, Judge

Trial Court Cause No.
45D10-1703-PL-000020

**Opinion by Judge Felix**
Judges Foley and Kenworthy concur.

**Felix, Judge.**

## Statement of the Case

Vince Caccavale contracted to purchase Starke County real estate from Ranger Team Building, LLC ("Ranger"). After the parties executed the contract but before closing, Caccavale backed out of the deal. Ranger sued Caccavale for breach of contract and obtained summary judgment in its favor as well as attorneys' fees. Caccavale now appeals and raises two issues for our review:

1. Whether the trial court erred in granting summary judgment in favor of Ranger; and
2. Whether the trial court erred in awarding attorneys' fees to Ranger.

Ranger cross-appeals and raises two issues for our review:

1. Whether Caccavale's appeal should be dismissed with prejudice; and
2. Whether the trial court erred in denying Ranger's motion for mediation-related sanctions.

Because we determine there are genuine issues of material fact preventing the entry of summary judgment, we reverse and remand for a trial. Further, we deny Ranger's request for us to dismiss this case and affirm the trial court's denial of Ranger's sanctions motions.

## Facts and Procedural History

In December 2016, Caccavale, as buyer, and Ranger, as seller, entered into a purchase agreement (the "Purchase Agreement") for the sale of an approximately 13-acre parcel located in rural Starke County for $57,500. The

Purchase Agreement contained the following relevant provisions concerning termination of the transaction and release of liability:

> J. **FLOOD AREA/OTHER:** If the property is located in a flood plain, Buyer may be required to carry flood insurance at Buyer's expense. Revised flood maps and changes to Federal law may substantially increase future flood insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insurance agents regarding the need for flood insurance and possible premium increases. Buyer **X may** __ **may not** terminate this Agreement if the Property requires flood insurance. Buyer **X may** __ **may not** terminate this Agreement if the Property is subject to building or use limitations by reason of the location, which materially interfere with Buyer's intended use of the Property.

> K. **INSPECTIONS: (Check appropriate paragraph number)**

> Buyer has been made aware that independent inspections disclosing the condition of the property are available and has been afforded the opportunity to require such inspections as a condition of this Agreement.

> > **X** 1. **BUYER <u>WAIVES THE RIGHT</u> TO HAVE INDEPENDENT INSPECTIONS**

> > Buyer WAIVES inspections and relies upon the condition of the Property based upon Buyer's own examination and releases the Seller, the Listing and Selling Brokers and all licensees associated with Brokers from any and all liability relating to any defect or deficiency affecting the Property, which release shall survive the closing. Required FHA/VA or lender inspections are not included in this waiver.

**__ 2. BUYER <u>RESERVES THE RIGHT</u> TO HAVE INDEPENDENT INSPECTIONS (including Lead-Based Paint)**

Buyer reserves the right to have independent inspection in addition to any inspection required by FHA, VA, or Buyer's lender(s). All inspections are at Buyer's expense (unless noted otherwise or required by lender) by licensed independent inspectors or qualified independent contractors selected by Buyer within the following time periods. . . .

Appellant's App. Vol. II at 69 (emphases in original).

[4]     In an earlier appeal in this case, we set forth the underlying dispute as follows:

The sale's closing date was set for January 30, 2017. After the parties executed the Purchase Agreement but before the closing date, [Ranger] allowed Caccavale to have a soil inspection done on the property. The soil inspector . . . concluded that the property was forested wetlands and that the Starke County Health Department would not issue a permit for a septic system necessary for Caccavale to construct a home on the property. Through his buyer's agent, . . . Caccavale tendered Ranger a mutual release from the Purchase Agreement. Ranger declined to execute the release. Caccavale did not attend the scheduled closing on the property.

*Ranger Team Bldg., LLC v. Caccavale*, 163 N.E.3d 323, No. 20A-PL-547, slip op. at ¶ 5 (Ind. Ct. App. 2020) (mem.).

[5]     In March 2017, Ranger sued Caccavale for breach of contract and sought specific performance of the Purchase Agreement, damages, and attorneys' fees.

Both parties filed motions for summary judgment, and Judge John Pera awarded summary judgment in favor of Ranger. Judge Pera specifically reserved ruling on Ranger's request for specific performance, setting a briefing schedule and hearing for the parties to address the appropriate remedy. Judge Pera left the bench before holding that hearing. Judge Thomas Webber became the pro tempore Judge presiding over this matter, and after holding the remedy hearing, he entered summary judgment in favor of Caccavale and dismissed the case. Ranger filed a motion to correct error, arguing that the trial court violated its due process rights by reversing Judge Pera's summary judgment ruling without notice. The trial court denied Ranger's motion, and Ranger appealed. In an unpublished decision, we concluded that the trial court abused its discretion by denying Ranger's motion to correct error, and we remanded the case to the trial court. *Ranger Team Bldg.*, 163 N.E.3d 323, No. 20A-PL-547, slip op. at ¶¶ 20, 22–23.

[6] On remand, the trial court reinstated its order granting summary judgment in favor of Ranger. After conducting a remedy hearing, the trial court determined that Ranger had fully mitigated its monetary damages by selling the Starke County property in 2022 for more than the purchase price that had been agreed to by Ranger and Caccavale. Ranger argued that it should be awarded attorney fees because it had prevailed in the lawsuit and a provision in the Purchase Agreement permitted the award of attorney fees. After a hearing, the trial court awarded Ranger $158,721.04 in attorneys' fees and costs. This appeal ensued. Additional facts are included below as necessary.

## Discussion and Decision

### 1. We Decline Ranger's Invitation to Reconsider Our Motions Panel's Denial of Ranger's Motion to Dismiss this Appeal

Before we address Caccavale's claims, we must address the first part of Ranger's cross-appeal, which asks us to dismiss this case with prejudice because Caccavale has transferred assets in an alleged attempt to make himself judgment proof. On October 3, 2023, before this case was fully briefed, this court's motions panel ordered Caccavale to post an appeal bond or irrevocable letter of credit within 20 days and file his brief within 30 days. On October 16, 2023, Caccavale filed a motion to set aside the bond requirement. The next day, our motions panel issued an order, without ruling on the motion to set aside, stating in relevant part that the appeal bond requirement was still in effect.

On November 2, 2023, while Caccavale's motion to set aside was pending and without filing an appeal bond, Caccavale filed his brief and appendix. Ranger subsequently filed a motion to dismiss this appeal with prejudice based on Caccavale's failure to comply with this court's October 3 order. On November 20, 2023, our motions panel denied Ranger's motion to dismiss and vacated its October 3 order requiring Caccavale to post an appeal bond.

Ranger now asks us to reconsider our motions panel's denial of Ranger's motion to dismiss. A writing panel of this court may reconsider a decision of our motions panel while the appeal remains pending, but we are reluctant to do so. *Means v. State*, 201 N.E.3d 1158, 1164–1165 (Ind. 2023) (citing *Bridgestone*

*Americas Holding, Inc. v. Mayberry*, 878 N.E.2d 189, 191 n.2 (Ind. 2007)) (quoting *City of Indianapolis v. Tichy*, 122 N.E.3d 841, 844 n.3 (Ind. Ct. App. 2019)). Generally, we overrule a decision of our motions panel only "where a more complete record reveals clear authority establishing that our motions panel erred." *Haggerty v. Anonymous Party 1*, 998 N.E.2d 286, 293 (Ind. Ct. App. 2013) (citing *Simon v. Simon*, 957 N.E.2d 980, 987 (Ind. Ct. App 2011)).

[10] Ranger specifically contends that we should dismiss this appeal because Caccavale has jeopardized the effectiveness of the money judgment Ranger obtained against him by disposing of assets after the entry of that judgment. In particular, Ranger points to evidence presented at a December 5, 2023, hearing before the trial court that showed, among other things, (1) approximately a month after the April 24 damages hearing, Caccavale sold to his grandson a parcel of North Carolina real estate that Caccavale owned via Triple Vee, LLC and then transferred the proceeds of that sale to his grandson's wife; (2) less than a month after the trial court ordered Caccavale to pay Ranger more than $150,000, Caccavale sold another parcel of North Carolina real estate, again owned via Triple Vee, and used the proceeds of that sale to build a house on property he owned via Triple Vee; and (3) about one month after this last real estate sale, Caccavale transferred full ownership of Triple Vee to his grandson for no consideration. Ranger argues that these facts show that Caccavale was attempting to prevent Ranger from being able to collect any monetary damages awarded to it as a result of this lawsuit.

It is well-established that "[w]here the subject matter of litigation has been removed or has removed itself from the jurisdiction of a state court in violation of that court's orders," an appellate court may dismiss the offending litigant's appeal. *Nat'l Union of Marine Cooks & Stewards v. Arnold*, 348 U.S. 37, 43 (1954); *see also Michael v. Michael*, 253 N.E.2d 261, 262 (Ind. 1969) (dismissing appeal of custody order where appellant had taken child outside of trial court's jurisdiction and failed to return); *Mason v. State*, 440 N.E.2d 457 (Ind. 1982) (dismissing an escaped prisoner's appeal as moot since he was not in custody). Notably, the Indiana Supreme Court has previously explained that there is a difference between an appellant's mere refusal to comply with a court order and an appellant leaving the jurisdiction to avoid a court order. In the first scenario, "the trial court is in a position to invoke its power and protect the integrity of its order." *Michael*, 253 N.E.2d at 262. In the second scenario, the trial court is not in a position to enforce its order because "the appellant is without its jurisdiction and the court has done all that it can to protect the integrity of our court system in view of appellant's concealment." *Id.*

Although the evidence about Caccavale's transfer and disposition of assets was not available to our motions panel when it denied Ranger's motion to dismiss, the parties have not identified and we cannot find any case law from this state that addresses if and under what circumstances we may dismiss an appeal due to the appellant allegedly jeopardizing the effectiveness of the money judgment

entered against him.[1]  However, we need not address this issue because Caccavale's allegedly contemptuous acts do not impinge on the substantive issues in this case.  *See Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) (explaining that Indiana courts have a well-established preference for deciding cases on their merits).  We thus reject Ranger's request for us to reconsider our motions panel's denial of Ranger's motion to dismiss and proceed to the merits of Caccavale's claims.

## 2. The Trial Court Erred in Granting Summary Judgment in Favor of Ranger

[13]  Caccavale contends the trial court erred by granting summary judgment in favor of Ranger.[2]  Ranger argued in relevant part that Caccavale breached the Purchase Agreement and that Caccavale cannot hold Ranger liable pursuant to

---

[1] Several other jurisdictions have addressed this issue or similar issues.  *See generally Nat'l Union of Marine Cooks & Stewards v. Arnold*, 348 U.S. 37 (1954) (holding Washington Supreme Court's dismissal of appeal did not violate the Due Process or Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and was a reasonable means of safeguarding the collectability of the money judgment where appealing party repeatedly failed to comply with trial court order requiring delivery of out-of-state bonds to secure money judgment); *Hentsch Henchoz & Cie v. Gubbay*, 97 P.3d 1283 (Utah 2004) (requiring appellant to comply with trial court's orders within 30 days and to post bond in order to avoid dismissal of appeal where appellant repeatedly defied discovery orders and stopped participating in the case after a number of adverse rulings); *Keidash v. Smith*, 400 So.2d 90 (Fla. Dist. Ct. App. 1981) (dismissing appeal where appellant fled the jurisdiction and defied a trial court order restraining him from transferring or disposing of assets outside the ordinary course of legitimate business and day-to-day living); *Stewart v. Stewart*, 372 P.2d 697 (Ariz. 1962) (en banc) (ordering appellant to comply with trial court's orders within 30 days or have appeal dismissed where appellant was in contempt for failing to pay support, maintenance, and attorneys' fees and failed to appear at related show cause hearings); *In re Marriage of Hofer*, 208 Cal.App.4th 454 (2012) (dismissing appeal where appellant challenged award of attorneys' fees based on lack of evidence of appellant's ability to pay despite appellant unlawfully withholding evidence of his income and assets).

[2] We observe that the parties filed cross motions for summary judgment.  However, Caccavale appeals only the trial court's decision to grant Ranger's motion for summary judgment; he does not appeal the trial court's denial of his own motion.  We thus address only Ranger's motion for summary judgment.

Section K.  Caccavale argued in relevant part that Section J of the Purchase Agreement permitted him to terminate that agreement once he discovered that he likely would not be able to install a septic system on the property, thus preventing him from building a residence thereon.

[14]  We review summary judgment decisions de novo, which means we apply the same standard as the trial court.  *Miller v. Patel*, 212 N.E.3d 639, 644 (Ind. 2023) (quoting *624 Broadway, LLC v. Gary Hous. Auth.*, 193 N.E.3d 381, 384 (Ind. 2022)).  Summary judgment is proper only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Ind. Trial Rule 56(C).  "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences."  *City of Marion v. London Witte Grp., LLC*, 169 N.E.3d 382, 390 (Ind. 2021) (quoting *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009)).

[15]  The party moving for summary judgment bears the burden of making a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Wireman v. LaPorte Hosp. Co.*, 205 N.E.3d 1041, 1045 (Ind. Ct. App. 2023) (citing *Serbon v. City of E. Chicago*, 194 N.E.3d 84, 91 (Ind. Ct. App. 2022)), *reh'g denied* (Apr. 5, 2023), *trans. denied*, 211 N.E.3d 1007 (Ind. 2023).  Only if the moving party meets this prima facie

burden does the burden then shift to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* (citing *Serbon*, 194 N.E.3d at 91).

[16] We resolve "all factual inferences and all doubts as to the existence of a material issue" in favor of the nonmovant. *Zaragoza v. Wexford of Ind., LLC*, 225 N.E.3d 146, 151 (Ind. 2024) (internal quotation marks omitted) (quoting *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012)). In so doing, "we give careful scrutiny to make sure the non-movant's day in court is not improperly denied." *Id.* (internal quotation marks omitted) (quoting *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016)).

[17] We first address the question of law raised by Ranger: whether Caccavale had the right to terminate the Purchase Agreement under Sections J and K. Contract interpretation is a question of law that we review de novo. *Illinois Cas. Co. v. B&S of Fort Wayne Inc.*, 235 N.E.3d 827, 832 (Ind. 2024) (citing *Lake Imaging, LLC v. Franciscan All., Inc.*, 182 N.E.3d 203, 206 (Ind. 2022)). "As such, cases involving contract interpretation are particularly appropriate for summary judgment." *Tricor Auto. Grp. v. Dealer VSC Ltd.*, 219 N.E.3d 206 (Ind. Ct. App. 2023) (quoting *B & R Oil Co. v. Stoler*, 77 N.E.3d 823, 827 (Ind. Ct. App. 2017)), *trans. denied sub nom. TriCor Auto. Grp. v. Elzayn*, 228 N.E.3d 1024 (Ind. 2024). When this court interprets a contract,

> we ascertain the intent of the parties at the time the contract was made, as disclosed by the language used to express the parties' rights and duties. We look at the contract as a whole ... and we accept an interpretation of the contract that harmonizes all its provisions. A contract's clear and unambiguous language is

given its ordinary meaning. A contract should be construed so as to not render any words, phrases, or terms ineffective or meaningless.

*Ryan v. TCI Architects/Eng'rs/Cont'rs, Inc.*, 72 N.E.3d 908, 914 (Ind. 2017) (internal citations omitted).

[18] Caccavale contends that Section J allowed him to terminate the Purchase Agreement once he discovered that he could not install a septic system on the Starke County property. Section J provides two circumstances under which Caccavale could have terminated the contract:

(1) if the property required flood insurance, or

(2) if

(a) the property was subject to building or use limitations by reason of the location, and

(b) those limitations materially interfered with Caccavale's intended use of the property.

*See* Appellant's App. Vol. II at 69. Caccavale claims the second contingency applies here. In her dissent in the first appeal in this case, Judge May agreed with Caccavale, opining that the inclusion of "OTHER" in the header for Section J makes the second contingency "separate from concerns about flooding, such that a buyer would have the option to terminate the Agreement for location-based building or use limitations that materially interfere with a

buyer's intended use of the property." *Ranger Team Bldg.*, 163 N.E.3d 323, No. 20A-PL-547, slip op. at ¶ 29.

[19] By contrast, Ranger asks us to read the second contingency as follows: the buyer may terminate the Purchase Agreement if (a) the property is subject to building or use limitations by reason of the location *within a flood plain* and (b) those limitations materially interfere with the buyer's intended use of the property. In support, Ranger points to our case law that states although headings may be helpful in determining the purpose of a particular contract provision, *see Ryan*, 72 N.E.3d at 915, "headings are not conclusive as to substantive provisions," *Kiltz v. Kiltz*, 708 N.E.2d 600, 603 (Ind. Ct. App. 1999) (citing *In re Marriage of Buntin*, 496 N.E.2d 1351, 1354 (Ind. Ct. App. 1986)).

[20] Ranger argues that "it is not the location of the real estate which materially interfered with the Buyer's intended use of the property, rather it was the condition of the property," such that Section K, not Section J, is the applicable provision here. Appellant's App. Vol. II at 153. In Section K, Caccavale waived his right to inspect the condition of the property and released Ranger "from any and all liability relating to any defect or deficiency affecting the Property." *Id.* at 69. In her dissent in the first appeal in this case, Judge May stated that "the inability to obtain a permit to install a septic system is a location-based building or use limitation, rather than a 'condition of the Property' for which Caccavale waived the right to hire an inspector under Section K." *Ranger Team Bldg.*, 163 N.E.3d 323, No. 20A-PL-547, slip op. at ¶ 30. We agree.

[21] The second contingency's plain language does not limit it to building or use limitations arising out of the property's location within a flood plain. Furthermore, and importantly, Caccavale's waiver of inspections and release of Ranger from liability for the condition of the property does not nullify Caccavale's right to terminate the Purchase Agreement pursuant to Section J. We thus conclude that if Caccavale intended to build a house on the property and his intention was materially interfered with due to the location of the property, then Caccavale had the right to terminate the Agreement pursuant to Section J's second contingency. This conclusion presents three issues of material fact that must be resolved: (1) Caccavale's intended use of the property when he signed the Purchase Agreement, (2) whether Caccavale's alleged inability to obtain a septic permit materially interfered with his intended use of the property, and (3) whether, in fact, a septic permit cannot be obtained.

[22] Considering Ranger's designated evidence in the light most favorable to Caccavale reveals that (1) Caccavale's real estate agent was helping him look for "property . . . to be used for hunting and other outdoor recreational activities," Appellant's App. Vol. II at 113; (2) the property had not been officially designated as a wetland; and (3) there was a possibility that a "mound septic system" could be installed on the property, Appellant's App. Vol. IV at 4. Because there are no genuine disputes of material facts within Ranger's own designated evidence, Ranger satisfied its prima facie burden and Caccavale had to designate evidence in response that creates a genuine issue of material fact.

[23] In response, Caccavale designated evidence that shows (1) Caccavale purchased the property to build a retirement home, and the property's listing indicated it was "[p]rime hunting ground or a great space to build your dream home," Appellant's App. Vol. II at 104; (2) the property is a wetland, Starke County does not issue septic permits for wetlands, and state and county regulations prohibit the issuance of a building permit for real estate where a septic system cannot be installed; and (3) Starke County's building inspector confirmed with Caccavale's real estate agent that a septic system would not be approved for the property. This evidence is sufficient to create genuine issues of material fact regarding all three issues delineated above. Because Caccavale met his burden of demonstrating the existence of genuine issues of material fact, the trial court erred by granting summary judgment in favor of Ranger.[3]

### 3. The Trial Court Did Not Abuse Its Discretion by Denying Ranger's Motion for Mediation-Related Sanctions

[24] Finally, we address the second part of Ranger's cross appeal: the trial court's denial of Ranger's motion for mediation-related sanctions. Indiana Alternative Dispute Resolution Rule ("ADR Rule") 2.10 gives courts the discretion to "impose sanctions against any attorney, or party representative who fails to comply with these mediation rules, limited to assessment of mediation costs and/or attorney fees relevant to the process." Ranger contends that Caccavale

---

[3] Based on this conclusion, we need not address Caccavale's argument regarding the trial court's decision to award Ranger attorneys' fees.

violated ADR Rule 2.1, which states, "[p]arties and their representatives are required to mediate in good faith." We review a trial court's decision on whether to award mediation-related sanctions for an abuse of discretion. *Stoehr v. Yost*, 765 N.E.2d 684, 686 (Ind. Ct. App. 2002) (citing *State v. Carter*, 658 N.E.2d 618, 621 (Ind. Ct. App. 1995), *disapproved of on other grounds by Lake Cnty. Tr. Co. v. Advisory Plan Comm'n of Lake Cnty.*, 904 N.E.2d 1274 (Ind. 2009)).

[25] Here, the parties engaged in mediation twice in this case: May 2019 and December 2021. On March 10, 2022, Ranger filed a motion for sanctions related to Caccavale's alleged bad faith during those mediation sessions. After a hearing, the trial court denied Ranger's motion, concluding that Ranger failed to demonstrate Caccavale mediated in bad faith. In reaching this conclusion, the trial court determined that much of the evidence Ranger presented— including testimony about what occurred at those sessions and the balance sheets Caccavale prepared therefor—was inadmissible because it was confidential under the ADR Rules or because it was evidence of settlement negotiations.

[26] Ranger now contends that the trial court abused its discretion by not considering the evidence it presented and consequently denying its sanctions motion. Even if we assume arguendo that Ranger's mediation-related evidence was admissible, this error was harmless because it still cannot show that Caccavale mediated in bad faith. *See* Ind. Appellate Rule 66(A).

[27] In the mediation context, we have previously defined "bad faith" as follows: "Bad faith amounts to more than bad judgment or negligence; 'rather it implies the conscious doing of wrong because of dishonest purpose or moral obliquity. It contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Stoehr*, 765 N.E.2d at 687 (alterations omitted) (quoting *Carter*, 658 N.E.2d at 621). Notably, the fact or amount of settlement offers and the parties' success in mediating their dispute is not necessarily indicative of the parties' good or bad faith at mediation because "mediation is not all 'about money.'" *Id.* (quoting *Gray v. Eggert*, 635 N.W.2d 667, 671 (Wis. Ct. App. 2001)). Other goals of mediation include stipulating to facts, identifying issues, reducing misunderstandings, clarifying priorities, and locating points of agreement. *Id.* at 689.

[28] Here, the May 2019 mediation occurred after Judge Pera entered summary judgment in favor of Ranger but before the hearing on damages. The purpose of this mediation session was seemingly for the parties to settle the issue of damages. At this time, Ranger was still seeking specific performance of the Purchase Agreement. The December 2021 mediation occurred after this court remanded the case and before the trial court reinstated Judge Pera's entry of summary judgment in favor of Ranger.[4]

---

[4] At this time, the parties were arguing the effect of this court's decision in the first appeal. Caccavale was arguing that the decision resulted in effectively reversing Judge Pera's entry of summary judgment, while Ranger argued that the appeal reinstated Judge Pera's summary judgment decision.

[29] According to Ranger, Caccavale's position at both mediation sessions was primarily that he did not have enough cash to settle the case. In support, Ranger points to two balance sheets prepared by Caccavale—one for the May 2019 session and another one after the December 2021 session to help the parties determine if a third session would be productive; those balance sheets reflected Caccavale's cash flow.

[30] Ranger believed that Caccavale was lying about his assets and told the mediator and Caccavale as much at the second mediation session in December 2021. Although Caccavale's balance sheets did not include his real property interests, he had previously disclosed to Ranger at least some of those interests in responses to interrogatories. Additionally, Ranger had previously requested Caccavale produce the closing documents from his real estate transactions identified in his responses to interrogatories, but Ranger never pursued those documents after Caccavale objected to producing them. Ultimately, Ranger chose to disengage from the mediation sessions and all other settlement discussions based on its belief that Caccavale was lying about his assets and would not or could not satisfy any monetary judgment entered against him.

[31] After consideration of this evidence, we cannot say that it demonstrates Caccavale mediated in bad faith. Determining the amount of damages the liable party owes to the injured party is separate and distinct from determining whether the liable party has the present or future ability to pay those damages. Nevertheless, Ranger chose to elevate its concerns about Caccavale's ability to pay over determining the amount of damages Caccavale owed and over

working through any relevant nonmonetary goals of mediation. Accordingly, any error stemming from the trial court's refusal to consider mediation-related evidence in ruling on Ranger's mediation-related sanctions motion was harmless because, even assuming the evidence was admissible, Ranger did not prove that Caccavale mediated in bad faith. *See* App. R. 66(A). We therefore cannot say the trial court abused its discretion by denying Ranger's motion for mediation-related sanctions.

## Conclusion

[32] In sum, we decline to reconsider our motions panel's denial of Ranger's motion to dismiss this appeal, the trial court erred by granting summary judgment in favor of Ranger, and the trial court did not abuse its discretion in denying Ranger's motion for sanctions. We therefore reverse the grant of summary judgment in favor of Ranger and remand for trial, and we affirm the trial court's denial of Ranger's sanctions motion.

[33] Affirmed in part, reversed in part, and remanded with instructions.

Foley, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Benjamen W. Murphy
Law Office Of Ben Murphy
Griffith, Indiana

ATTORNEYS FOR APPELLEE

Bryan H. Babb

Bradley M. Dick
Bose McKinney & Evans LLP
Indianapolis, Indiana