No. 84-524

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

ELIZABETH E. SHIELDS and LESTER
H. SHIELDS, husband and wife,

       Plaintiffs and Appellants,

   -vs-

MARGARET THUNEM,

       Defendant and Respondent.

_____

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Gregory E. Paskell, Kalispell, Montana


    For Respondent:

        John H. Bothe, Columbia Falls, Montana

_____

Submitted on Briefs: Dec. 19, 1985

Decided: April 1, 1986

Filed: APR 1 - 1986

_____
Clerk

Mr. Justice L. C. Gulbrandson, delivered the Opinion of the Court.

Lester and Elizabeth Shields appeal a Flathead County District Court order which held that appellants had conveyed all their right, title and interest in certain real property to respondent Margaret Thunem. The only issue on appeal is whether the trial judge should have disqualified himself from hearing the case because he participated in extensive pretrial settlement negotiations. We affirmatively answer this question and reverse the order of the District Court.

In April 1980, Lester and Elizabeth Shields filed an intervenor's complaint in Flathead County District Court against Lester's mother, the respondent here, Margaret Thunem. The intervenor's complaint sought to set aside warranty deeds signed by the Shields which purported to convey title to certain real property to respondent. The complaint requested that the lower court restore title to the Shields. At the time the intervenor's complaint was filed, Lester Shields and respondent were both plaintiffs in a quiet title action concerning the same property against a number of defendants. The Flathead County District Court resolved that action in December 1980 by quieting title to the property in the Shields and respondent Margaret Thunem. The Shields then proceeded with their suit against respondent.

The trial in this case was scheduled for July 26, 1984. On the morning of July 26, the parties met with the judge before the trial was to begin. The Shields were not represented by counsel in the meetings with the judge or at trial later that day. The Shields' version of what happened that morning is set forth in a motion to settle bystander's

2

bill of exceptions and in two affidavits filed by the Shields in support of the motion. The Shields' version is as follows. Upon the Shields' arrival at the courthouse, the trial judge informed them that he was going to mediate or arbitrate a settlement of the case. The judge directed respondent and her attorney to one room and the appellants to another room. The judge then carried settlement offers and counter-offers back and forth between the parties. Appellants discussed their contentions in detail with the judge. The judge stated that appellants should try and settle the case out of court because they would probably lose a trial due to their pro se representation. After much discussion with the judge on the merits of the case, the parties still were unable to reach a settlement. When it became apparent the case would have to proceed to trial, Lester Shields asked the judge to "step down" from hearing the case because Shields believed the judge was prejudiced against the appellants. The judge declined and the case went to trial later that afternoon.

In April 1985, the trial judge held a hearing at which he gave his version of what happened on the morning of the trial. The judge stated that all parties in this case consented to his conducting discussions in an attempt to settle the case. The judge stated that such consent was given with full understanding that he would proceed with the trial if the negotations failed. He disagreed with the Shields' assertion that he felt they would lose the case because of their pro se representation. He added that he would not and did not allow the negotiation efforts to affect his perception or treatment of the evidence presented at trial. The judge admits that he met with each party without

3

the other party being present, although he asserts this was done with their consent. He also admits that in these meetings, with one party absent, there were discussions relative to the merits of the case. The judge conceded that, after the negotiations failed and prior to the start of the trial, Lester Shields asked him to excuse himself from the case alleging that the judge was prejudiced against appellants. Lastly, the judge stated that he was not excluding Shields' affidavits from the record of what happened the day of trial.

Following trial, the lower court found that respondent was the sole owner of the disputed property and, accordingly, the court dismissed appellants' claims. The Shields appealed and, following Shields' motion to settle bystander's bill of exceptions, the lower court held a hearing in April 1985 to prepare a supplemental transcript on appeal. At this hearing, the lower court judge gave his version of what happened the day of trial.

As stated, the sole issue is whether the trial judge should have disqualified himself, upon request, after pre-trial settlement negotiations failed. The judge himself admits he conducted ex parte meetings with the parties at which the merits of the case were discussed. He does not assert that he disclosed the substance of the discussions to the absent party. The record is clear that the trial judge made every effort to encourage the plaintiffs to obtain the services of legal counsel, and that the trial judge was acting in good faith in his efforts to settle a case which had been pending for eleven years.

Few courts have addressed the issue presented in this case. One court that has is the Connecticut Supreme Court.

4

In Timm v. Timm (Conn. 1985), 487 A.2d 191, 193, the Connecticut court stated:

> "When . . . a judge engages in a chambers conference looking to the settlement of a case . . . in which he will be called upon to decide the issues of liability and damages . . . [i]t is . . . impossible to avoid questions as to whether the judge can disregard . . . matters disclosed in the conference . . . and whether a preliminary judgment, formed at the conference and predicated on unsubstantiated claims of proof, may have some subtle influence on a final judgment after a full hearing. . . . It is inevitable that the basis is laid for suspicion, no matter how unfounded or unjustified it may be, and that failure to concur in what the judge may consider an adequate settlement may result in the imposition, upon a litigant or his counsel, of some retributive sanction or the incurrence of judicial displeasure."

> . . .

> . . . When a judge engages in a pretrial settlement discussion in a court case, he should automatically disqualify himself from presiding in the case in order to elminate any appearance of impropriety and to avoid subtle suspicions of prejudice or bias. [Citations omitted.]

This Connecticut disqualification rule is partially based upon a specific section of their Code of Judicial Conduct which advises a judge to disqualify himself if he or she has ". . . personal knowledge of disputed evidentiary facts . . .." Canon 3C(1)(a), Connecticut Code of Judicial Conduct. Montana does not have such a specific provision advising a judge to disqualify himself.

The Massachusetts court in Furtado v. Furtado (Mass. 1980), 402 N.E.2d 1024, 1036, stated:

> Where the judge is the trier of fact, he must be most scrupulous both to avoid losing his impartiality and to maintain his unfamiliarity with disputed matters which may come before him and with extraneous matters which should not be known by him. [Citations omitted.]

5

Additionally, in a case from the Third Circuit Court of Appeals, the federal court stated:

> . . . the district judges . . . must not permit their role as a negotiator to obscure their paramount duty to administer the law in a manner that is both fair in fact and has the appearance of fairness. Although settlement is important given the rising caseload, it can lead to action that is not consistent with the judicial function.

Johnson v. Trueblood (3rd Cir. 1980), 629 F.2d 287, 292.

This Court has not previously adopted a procedural rule covering the described situation, but because of the apparent growing trend of trial judges to participate in pre-trial settlement negotiations, we conclude that where a judge is to be the trier of fact, and he participates in pre-trial settlement negotiations which subsequently fail, he should, upon request, disqualify himself from sitting as the trial judge.

In these circumstances, we hold that the Shields' request was sufficient to require the trial judge to disqualify himself from the case. Therefore, we reverse the District Court judgment and order and remand this case to the District Court for a new trial. Because it is not possible to determine if Lester Shields was _formally_ dismissed, his status as a party plaintiff should be determined upon retrial.

_____
                                    Justice


We Concur:

_____
        Chief Justice

6

*John Conway Harrison.*

*John C. Sheehy*

*[signature]*

*[signature]*

*William E. Hunt Sr.*

Justices

7