No. 92-153

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

---

ROBERT J. SCHELLIN, ELDON GILMORE,
EUGENE MONSON, and LAWRENCE SIEMENS,

       Petitioners and Respondents,

  -v-

NORTH CHINOOK IRRIGATION ASSOCIATION,
a corporation registered in Montana,

       Respondent and Appellant.



FILED

MAR 10 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM: District Court of the Seventeenth Judicial District,
In and for the County of Blaine,
The Honorable Leonard Langen, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Thomas J. Sheehy, Big Sandy, Montana; Russ McElyea,
          Moore, O'Connell, Refling & Manos, Bozeman, Montana

      For Respondent:

          Sarah Arnott Ozment, Livingston, Montana

---

Submitted on Briefs: December 10, 1992

Decided: March 10, 1993

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

The North Chinook Irrigation Association appeals from an order of the District Court for the Seventeenth Judicial District, Blaine County, concerning the use of water from Lodge Creek, north of Chinook, Montana. We vacate the District Court's order and remand for further proceedings consistent with this opinion.

We conclude that the District Judge should have recused himself after participating in negotiations between the parties. Because we vacate the court's order on that basis, we do not consider the other issues raised on appeal.

North Chinook Irrigation Association is a corporation held by farmers and ranchers who use water from Lodge Creek, in north-central Montana. The Association maintains a dam across the creek approximately twenty-six miles north of Chinook, Montana. Head-gates above the dam direct water down a canal to the Association's off-stream reservoir about six miles to the east.

Petitioners Robert J. Schellin, Eldon Gilmore, Eugene Monson, and Lawrence Siemens are farmers and ranchers who are not Association members and whose property lies along Lodge Creek at and downstream from the Association's dam. They brought this action in 1987, seeking an injunction preventing the Association from continuing to operate its dam and canal. They also sought transfer of this controversy to the Water Court pursuant to § 85-2-216, MCA, so that the parties' water rights could be adjudicated and a water commissioner could be appointed to administer the resulting decree.

2

The case was transferred from the District Court to the Water Court. In 1990, the Water Court transferred it back to District Court "for interim settlement of the water distribution controversy until such time as the Montana Water Court's general adjudication is undertaken for the waters of Lodge Creek, a tributary of the Milk River Basin (40J)." The Water Court ruled that under § 85-2-406, MCA, the District Court is the proper forum for this matter because it is a water distribution controversy. This Court denied the petitioners' request for supervisory control on that ruling.

Just before a scheduled October 10, 1991 District Court hearing on the petitioners' motion for a preliminary injunction, the parties' attorneys and the District Judge inspected the Association's dam and canal. At the court's suggestion, settlement meetings between the parties were commenced that evening. As the court pointed out, any decision it would reach would only be temporary, until the Water Court determines water rights.

After negotiations continued for most of the next day, the court announced, over objections by the Association, that a settlement had been reached. The court caused a partial record to be made of the settlement discussions. Working from its understanding of the settlement discussions and from the transcript, on March 13, 1992, the court issued a final order together with a memorandum opinion and findings of fact which purported to memorialize the agreement reached by the parties. The Association appeals.

Should the District Judge have recused himself after participating in negotiations between the parties?

In Shields v. Thunem (1986), 220 Mont. 449, 452, 716 P.2d 217, 219, this Court concluded that

> where a judge is to be the trier of fact, and he participates in pre-trial settlement negotiations which subsequently fail, he should, upon request, disqualify himself from sitting as the trial judge.

In reaching that conclusion, this Court cited with approval cases from several other jurisdictions. As discussed in the quotations from those cases, the aim is to eliminate any impression of impropriety or bias on the part of the trial judge resulting from participation in pretrial negotiations. Shields, 716 P.2d at 218-19.

The petitioners attempt to minimize the extent of the District Judge's participation in the settlement negotiations in this case. They state that he was not demanding in his suggestion that the parties attempt settlement, that he did not actively participate in or control the direction of negotiations between the parties, and that he did not order counsel to refrain from advising their clients during the negotiation process.

This Court's review of the record, however, leaves us with the firm impression that the District Judge was a participant in the settlement negotiations. He "really strongly recommend[ed]" that the parties "get this case settled." He offered to give advice if impasses were reached in negotiations. He made suggestions concerning use of a headgate, employment of a contractor to do dirt work on a ditch, and sharing of the cost of the transcript. He suggested a clause in the settlement agreement limiting its purpose

4

and dictated settlement terms under which the Association could spray on petitioner Schellin's land. Finally, he took it upon himself to reduce the claimed settlement agreement to writing.

The settlement discussions between the parties occurred on October 10 and 11, 1991. No written agreement was immediately composed. On October 16, 1991, the Association moved that the District Judge be disqualified for cause. It also moved that the temporary restraining order be continued and that its application for a preliminary injunction be set for hearing. The court issued an order denying the motion for disqualification. Six months later, the court entered its final order and memorandum opinion memorializing the claimed settlement.

The petitioners reason that Shields does not apply because settlement negotiations did not fail in this case. We do not agree. When the Association made its October 16, 1991 motions, it was clear there was a serious question about the success of the pre-trial settlement negotiations in which the court had participated. We approve of the judge's attempts to mediate and to have the parties reach an interim settlement of a complex controversy. We hold, however, that pursuant to our opinion in Shields, the Association's objections and the October 16, 1991 motions required the District Judge to disqualify himself.

We vacate the District Court's final order and memorandum opinion and findings of fact, and remand this case for further proceedings before a new district judge to determine whether the

5

agreement obtained between the parties is binding, and for such other proceedings that may come before the court in this cause.

_R. C. McDonough_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_William E. Hunt_

_Terry Trieweiler_

_Fred J. Weber_

_Karla M. Gray_
Justices