# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 7, 2000 Session

## TEAM DESIGN, ET AL. v. ANTHONY GOTTLIEB, ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 98C-162    Barbara N. Haynes, Judge

---

### No. M1999-00911-COA-R3-CV - Filed July 18, 2002

---

This appeal raises important issues regarding the permissible range of court-annexed alternative dispute resolution procedures available under Tenn. S. Ct. R. 31. The case began in the Davidson County General Sessions Court as a dispute over payment for artwork and graphic design for a country music album. All the parties were dissatisfied with the general sessions court's disposition of their claims and perfected de novo appeals to the Circuit Court for Davidson County. When a dispute arose over the inability of two of the parties to be present on the agreed-upon trial date, the trial court, with all parties' agreement, entered an order referring the case to "binding mediation." The trial court conducted separate, off-the-record discussions with each of the parties and then entered an order finally adjudicating their claims. One of the parties filed a Tenn. R. Civ. P. 59.04 motion objecting to the order on the ground that it had not agreed to waive its right to a trial if the outcome of the mediation was unsatisfactory. After the trial court denied its motion, the moving party perfected this appeal. We have determined that the trial court lacked authority to conduct binding mediation or to finally adjudicate the parties' claims. Accordingly, we vacate the final order.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

S. Ralph Gordon, Nashville, Tennessee, for the appellant, Intersound Entertainment, Inc.

James H. Harris III, Nashville, Tennessee, for the appellee, Anthony Gottlieb.

Daniel B. Eisenstein, Nashville, Tennessee, for the appellees, Team Design and Harris Graphics, Inc.

### OPINION

### I.

Michael J. Bonagura and Kathie Baillie Bonagura perform country music in a group known as "Baillie and the Boys." When the transactions giving rise to this lawsuit arose, they were managed by Anthony Gottlieb, who did business as Morningstar Management. On January 22,

1996, the Bonaguras signed an "Exclusive Artist Agreement" with Intersound Entertainment, Inc. ("Intersound"), a Minnesota corporation whose principal place of business was in Roswell, Georgia. This agreement obligated Intersound to be responsible for the artwork and graphic design for the Baillie and the Boys albums.

With Intersound's knowledge and consent, the Bonaguras hired Harris Graphics, Inc. and Team Design to develop the artwork and graphics for an upcoming album called "Lovin' Every Minute." They believed that Intersound would be responsible for paying for this work. However, unbeknownst to the Bonaguras, Mr. Gottlieb had delivered a letter to Intersound agreeing that the Bonaguras would be responsible for paying for the artwork and graphic design for this album.

When Harris Graphics and Team Design were not paid for their work, they filed suit in the Davidson County General Sessions Court against Intersound and Mr. Gottlieb seeking payment and an injunction against the use of their work until they were paid. The general sessions court later permitted Harris Graphics and Team Design to add the Bonaguras as defendants. Following a hearing, the general sessions court granted Team Design a $4,086.75 judgment against Intersound and the Bonaguras. It also granted Harris Graphics a $2,200 judgment against Intersound and a $2,760 judgment against the Bonaguras.

All the parties perfected de novo appeals to the Circuit Court for Davidson County. Thereafter, the Bonaguras filed a cross-claim against Intersound alleging that it was contractually responsible for paying for the artwork and graphic design for the "Lovin' Every Minute" album. They also filed a cross-claim against Mr. Gottlieb asserting that he had violated his fiduciary duty by sending the letter to Intersound agreeing that they would be responsible for the artwork and graphic design for the "Lovin' Every Minute" album. In response, Mr. Gottlieb filed a cross-claim against the Bonaguras seeking $31,786.17 in unpaid management fees and expenses.

The trial was originally set for September 1998 but, at the trial court's initiative, was continued twice to February 16, 1999. Approximately one month before trial, the lawyer representing the Bonaguras requested his fellow lawyers to agree to preserve the Bonaguras' trial testimony by taking their depositions because Cactus Pete's in Jackpot, Nevada had declined to release them from a pervious contractual commitment that conflicted with the rescheduled court date. The lawyers agreed, and the Bonaguras' depositions were scheduled for January 19, 1999. However, before the depositions could be taken, Mr. Gottlieb changed his mind and insisted that the Bonaguras be present at the trial. On January 21, 1999, the Bonaguras filed a motion seeking a continuance and an order enforcing the agreement permitting them to present their testimony by deposition. Team Design and Harris Graphics agreed to the use of the depositions at trial but objected to another continuance.

The trial court conducted a hearing on the Bonaguras' motion on February 5, 1999.[1] After the trial court agreed to the Bonaguras' request for a continuance, the lawyers and the trial court

---

[1]No record of this hearing has been preserved. However, the record contains affidavits by two of the participating lawyers concerning their recollection of the hearing. The recollections of a third lawyer are contained in an unverified response to Intersound's Tenn. R. App. P. 59.04 motion.

began discussing another trial date. During this discussion, the trial court offered the alternative of "binding mediation" and stated that it would be available to conduct the mediation on March 11, 1999. The record contains no indication that the trial court informed the parties of the specific procedures that would be used for this mediation or the legal consequences of their agreement to participate in the mediation.[2] The lawyers for all the parties accepted the court's offer, and on February 16, 1999, the trial court entered an order referring the case to "binding mediation before this Court" on March 11, 1999.

Thereafter, the trial court directed the parties to submit confidential statements outlining their respective positions. When the parties returned to court on March 14, 1999,[3] a clerk explained the procedure the trial court intended to follow which consisted of separate meetings with each of the parties and their lawyers in chambers. Over the next four hours, the trial court met separately with each of the parties and their lawyer. According to one of the lawyers, the trial court "made no attempt to seek a mutual agreement as to a resolution of the issues among the parties, but, after the final interview, announced that she would make a decision and enter an [o]rder reflecting her decision." On March 19, 1999, the trial court entered an order awarding Team Design a $4,086.75 judgment against Intersound and awarding Harris Graphics a $5,044.45 judgment against Intersound. The trial court also awarded Intersound a judgment against Mr. Gottlieb for one-third of the total amount of Team Design's and Harris Graphics' judgments to be paid from moneys he received from the "Lovin' Every Minute" album. Likewise, the trial court awarded Intersound a judgment against the Bonaguras for one-third of the of Team Design's and Harris Graphics' judgments to be paid from the royalties generated from their "Lovin' Every Minute" album.

On March 31, 1999, Intersound filed a Tenn. R. App. P. 59.04 motion based on its lawyer's assertion that he had understood that the "binding mediation" offered by the trial court would be the sort of mediation authorized by Tenn. S. Ct. R. 31 in which he had previously participated in other cases. He also asserted that he never would have agreed to mediation had he understood the procedure that the court planned to follow. Team Design, Harris Graphics, and Mr. Gottlieb opposed the motion. They argued (1) that all the parties had agreed to "binding mediation," (2) that Intersound had not objected to the procedure prior to the entry of the March 19, 1999 order, and (3) that it would be unfair to permit Intersound to object to the proceeding at this point. The trial court entered an order on April 29, 1999, denying Intersound's post-trial motion. Intersound has perfected this appeal.

## II.
### THE TRIAL COURT'S AUTHORITY TO CONDUCT BINDING MEDIATION

We turn first to the question of a Tennessee trial court's authority to conduct "binding mediation." Intersound asserts that any sort of mediation conducted by a trial court in Tennessee

---

[2]One of the lawyers states in his unverified response to the Tenn. R. Civ. P. 59.04 motion that the parties agreed that they would be bound by the trial court's decision and that there would be no appeal from this decision. Neither of the affidavits submitted by the other two lawyers contains this specific assertion.

[3]No record of these informal proceedings has been preserved.

must be consistent with Tenn. S. Ct. R. 31. In response, Team Design, Harris Graphics, and Mr. Gottlieb assert that the parties and the trial court may, by agreement, agree upon an alternative dispute procedure that does not meet all the requirements of Tenn. S. Ct. R. 31 and that the trial court and the parties did precisely that. We have determined that all court-annexed alternative dispute resolution procedures must be consistent with Tenn. S. Ct. R. 31 and that the "binding mediation" procedure used in this case was not consistent with Tenn. S. Ct. R. 31.

## A.

Public policy strongly favors resolving disputes between private parties by agreement. Private parties may, of course, decide to submit their disputes to the courts for resolution; however, a broad range of other formal and informal alternatives are available before they resort to litigation. These procedures are, as a practical matter, limited only by the parties' imaginations because the parties themselves may agree on virtually any mutually satisfactory procedure that is not illegal or contrary to public policy.[4] Thus, alternative dispute resolution procedures may range from formal procedures such as arbitration under Tennessee's version of the Uniform Arbitration Act[5] to far less formal procedures such as "splitting the difference," flipping a coin, or, for that matter, arm wrestling. At least with regard to formal agreements to resolve disputes, the courts will require the parties to follow their agreed-upon dispute resolution procedure as long as they are competent and are dealing at arm's length.[6] When the parties have agreed to be bound by the outcome of their agreed-upon procedure, the courts will require them to accept the result by declining to try their dispute de novo and by limiting the scope of judicial review of the outcome.[7]

The parties' ability to manipulate the contours of the procedure to resolve their disputes narrows considerably once they submit their dispute to the courts for resolution. Judicial

---

[4]Obviously, force or violence or the threat of force or violence are unacceptable procedures for resolving disputes. Likewise, it is unlikely that the courts would recognize or enforce resolutions of disputes based on once-recognized procedures such as compurgation, trial by combat, or trial by ordeal.

[5]Tenn. Code Ann. §§ 29-5-301, -320 (2000).

[6]*D & E Constr. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 518 (Tenn. 2001) (holding that "[w]hen the parties agree to arbitrate, they are bound by the terms of that arbitration provision.").

[7]The parties' decision to make the results of their alternative dispute resolution proceeding "binding" or "final" reflects their intention that the issues joined and resolved in the proceeding cannot be tried again in court. *M & C Corp. v. Erwin Behn GmbH & Co., K.G.*, 87 F. 3d 844, 847 (6th Cir. 1996). Thus, the outcome of a "final" or "binding" proceeding is conclusive on the parties, and the courts play only a limited role when asked to review the results of these proceedings. *Arnold v. Morgan Keegan & Co.*, 914 S.W.2d 445, 448 (Tenn. 1996); *Vaughn v. Herndon*, 91 Tenn. 64, 68, 17 S.W. 793, 794 (1891). The courts may modify or correct these decisions only in limited circumstances, *see, e.g.*, Tenn. Code Ann. § 29-5-314, and they may vacate an award only on the basis of fraud, corruption, or other misconduct by the person or persons who made the decision. *Jocelyn v. Donnel*, 7 Tenn. (1 Peck) 274, 275 (1823) (holding that "[a]n award good upon the face of it can not be impeached but upon objections which go to the misbehavior of arbitrators."); Tenn. Code Ann. § 29-5-313; *see also*, *Grobet File Co. of Am., Inc. v. RTC Sys., Inc.*, 524 N.E.2d 404, 406 (Mass. App. Ct. 1988); *Motor Vehicle Acc. Indemnification Corp. v. Aetna Cas. & Sur. Co.*, 674 N.E. 1349, 1353-54 (N.Y. 1996).

proceedings must be conducted in accordance with the ancient common-law rules, applicable constitutional principles, statutes, and court rules.

In Tennessee prior to 1995, traditional litigation was the only procedure available to parties who turned to the courts for resolution of their disputes. The trial courts lacked express authority to provide judicial oversight over pending cases other than the sort of oversight traditionally provided by American judges.[8] They certainly did not have express authority to offer or require the use of alternative dispute resolution procedures. This changed on July 1, 1995, when amendments to Tenn. R. Civ. P. 16 greatly expanded the trial courts' case management authority.[9] For the first time, Tenn. R. Civ. P. 16.03(7) specifically empowered trial courts to discuss "the possibility of settlement or the use of extrajudicial procedures, including alternative dispute resolution, to resolve the dispute." These amendments did not, however, empower trial courts to require the parties to engage in any sort of alternative dispute resolution procedure or to participate in any such procedure themselves. These changes were to come five months later.

On December 18, 1995, the Tennessee Supreme Court filed Tenn. S. Ct. R. 31 establishing procedures for court-annexed alternative dispute resolution in Tennessee's trial courts. Like the amendments to Tenn. R. Civ. P. 16, Tenn. S. Ct. R. 31 was based in large part on the recommendations contained in the June 1994 report of the Tennessee Supreme Court Commission on Dispute Resolution. The original version of the rule represented an incremental approach[10] to court-annexed alternative dispute resolution. The procedures permitted by Tenn. S. Ct. R. 31 were intended to be alternatives, not replacements, to traditional litigation.[11]

Under the original version of the rule, Tenn. S. Ct. R. 31 procedures became available only after "all parties are before the court."[12] At that time, any or all of the parties could request authorization to engage in an alternative dispute resolution procedure.[13] The rule also permitted the trial court, even without the parties' request or consent but after consultation with the lawyers and

---

[8]Tenn. R. Civ. P. 16 permitted trial courts to conduct pre-trial conferences, but these conferences were limited to matters affecting the efficiency of the trial. While some trial courts may have, on occasion, informally recommended settlement rather than litigation, this practice was neither uniform nor prevalent.

[9]The amendments to Tenn. R. Civ. P. 16 tracked the recommendations contained in the June 1994 report of the Tennessee Supreme Court Commission which, in turn, reflected the 1983 revisions to Fed. R. Civ. P. 16. Report of Tennessee Supreme Court Comm'n on Dispute Resolution 16-20 (June 1994) ("ADR Report").

[10]Penny J. White, *Yesterday's Vision, Tomorrow's Challenge: Case Management and Alternative Dispute Resolution in Tennessee*, 26 U. Mem. L. Rev. 957, 959 (1996) ("White").

[11]White, 26 U. Mem. L. Rev. at 963.

[12]Tenn. S. Ct. R. 31, § 11(a) (1995). This section was renumbered as Tenn. S. Ct. R. 31, § 10(a) in 1996 but was removed from Tenn. S. Ct. R. 31 when the Tennessee Supreme Court rewrote the rule in 2001.

[13]Tenn. S. Ct. R. 31, § 3 (1995).

the parties,[14] to require the parties to participate in a judicial settlement conference, a mediation, or a case evaluation.[15] In addition, with the consent of all parties, the trial court could refer the case for "non-binding arbitration, mini-trial, summary jury trial, or other appropriate alternative dispute resolution proceedings."[16]

The original version of Tenn. S. Ct. R. 31, like the current version, specifically defined each of the alternative dispute resolution methods contemplated by the rule. Consistent with the Commission's recommendation that court-annexed alternative dispute proceedings should be non-binding,[17] each of these methods were intended to promote negotiated settlements between the parties themselves. They were not intended to require the parties to relinquish their decision-making right to any third party who would make the decision for them.

The fact that all proposed alternative dispute resolution methods are non-binding is an essential attribute of the court-annexed procedures permitted by Tenn. S. Ct. R. 31.[18] The rule specifically defines mediation as "an informal process in which a neutral person . . . conducts discussions among the disputing parties designed to enable them to reach a mutually acceptable agreement among themselves on all or any part of the issues in dispute."[19] The arbitration permitted by the rule must be "non-binding."[20] Likewise, a "case evaluation" is advisory only; a "mini-trial"

---

[14]Tenn. S. Ct. R. 31, § 11(b) (1995) required prior consultation to determine whether the dispute was amenable to alternative dispute resolution and, if so, which method would be most appropriate. However, Tenn. S. Ct. R. 31, § 3(b) now dispenses with the prior consultation requirement and empowers trial courts to enter "standing orders" requiring all cases to be referred to one of three methods of alternative dispute resolution.

[15]Tenn. S. Ct. R. 31, § 3 (1995). This provision is now found in Tenn. S. Ct. R. 31, § 3(b).

[16]Tenn. S. Ct. R. 31, § 3 (1995). This provision is now found in Tenn. S. Ct. R. 31, § 3(d). Tenn. S. Ct. R. 31, §§ 23 and 24 also make clear that trial courts may provide for mini-trials and summary jury trials "only with the consent of the parties."

[17]ADR Report, at 44.

[18]Alternative dispute resolution experts repeatedly emphasize that voluntariness and self-determination are essential ingredients of mediation and that parties must remain free to reject the process or its outcomes without repercussions. John W. Cooley, *Mediation Advocacy* § 1.1 (1996); *see also* Thomas R. McCoy, *The Sophisticated Consumer's Guide to Alternative Dispute Resolution Techniques: What You Should Expect (or Demand) From ADR Services*, 26 U. Mem. L. Rev. 975, 979-983 (1996) ("McCoy"); John Reerick, et al., *Standards of Professional Conduct in Alternative Dispute Resolution*, 1995 J. Disp. Resol. 95, 117; Lawrence M. Watson, Jr., *Advice and Opinions From Mediators: A Rational Analysis*, 13 Resol. Rep. 13, 14 (Jan. 1998).

[19]Tenn. S. Ct. R. 31, § 2(c) (1995). The same definition of mediation is currently found in Tenn. S. Ct. R. 31, § 2(f).

[20]Tenn. S. Ct. R. 31, § 2(e) (1995). The same definition of non-binding arbitration is currently found in Tenn. S. Ct. R. 31, § 2(h). In its 2001 revisions to Tenn. S. Ct. R. 31, the Tennessee Supreme Court added a new section specifically empowering trial courts to "conduct Non-Binding Arbitration in accordance with procedures to be developed by Local Rule, by Standing Order or in consultation with the parties." Tenn. S. Ct. R. 31, § 21. The court attached to the amended rule "Appendix B" consisting of a "template form of order for consideration and possible use

(continued...)

-6-

envisions that "the parties or their representatives [will] seek a negotiated settlement of the dispute;"[21] and a "summary jury trial" envisions only an "advisory verdict" followed by a "negotiated settlement."[22] In 1996, the Tennessee Supreme Court reaffirmed that all court-annexed alternative dispute resolution proceedings permitted by Tenn. S. Ct. R. 31 were premised on the principle of "self-determination."[23]

Another essential attribute of alternative dispute resolution is the neutrality and impartiality of the mediators, arbitrators, or other neutral persons conducting the process. *Poly Software Int'l, Inc. v. Su*, 880 F. Supp. 1487, 1494 (D. Utah 1995) (noting that the success of mediation depends largely on the ability of the mediator to maintain a neutral position while carefully preserving the confidences that have been revealed); *Howard v. Drapkin*, 271 Cal. Rptr. 893, 902 (Ct. App. 1990) (observing that the job of third parties such as mediators, conciliators and evaluators involves impartiality and neutrality, as does that of a judge, commissioner or referee).[24] The importance of neutrality is reflected in the fact that Tenn. S. Ct. R. 31 refers to persons conducting court-annexed alternative dispute resolution proceedings as "dispute resolution neutrals."[25] It is also reflected in the Standards of Professional Conduct for Rule 31 Mediators adopted by the Tennessee Supreme Court on September 26, 1996, which state that "[i]ntegrity, impartiality, and professional competence are essential qualifications of any mediator." Tenn. S. Ct. R. 31, Appendix A, § (2)(a).[26]

A third essential attribute of the court-annexed procedures permitted by Tenn. S. Ct. R. 31 is confidentiality. All parties in a mediation proceeding trust that the proceeding will be confidential because these proceedings permit them to "bare their soul" to the mediator and provide them the opportunity to vent which, in some instances, is all that stands in the way of a negotiated settlement.

---

[20](...continued)
by parties and courts in fashioning their own order for non-binding arbitration." Inexplicably, paragraph 15 of the form "Agreed Order For Non-Binding Arbitration" in Appendix B appears to permit the parties to "stipulate" that the award reached in the "non-binding arbitration" shall be "final and binding." We need not address in this case how a non-binding arbitration can result in a "final and binding" award because the 2001 revisions to Tenn. S. Ct. R. 31 do not govern this proceeding which took place in 1999. The 2001 revisions have prospective effect only. *Steiner-Liff Iron & Metal Co. v. Woodmont Country Club*, 480 S.W.2d 533, 540 (Tenn. 1972).

[21]Tenn. S. Ct. R. 31, § 2(g) (1995). This provision now appears in Tenn. S. Ct. R. 31, § 2(g).

[22]Tenn. S. Ct. R. 31, § 2(h) (1995). This provision now appears in Tenn. S. Ct. R. 31, § 2(m).

[23]Tenn. S. Ct. R. 31, Appendix, § (1)(d)(6). The principle of self-determination now appears in Tenn. S. Ct. R. 31, Appendix A, § 1(c)(6).

[24]*See also* Donovan Leisure Newton & Irvine, *ADR Practice Book* 468 (John H. Wilkinson ed. 1990); Amanda K. Esquibel, *The Case of the Conflicted Mediator: An Argument For Liability and Against Immunity*, 31 Rutgers L.J. 131, 134 (1999).

[25]Tenn. S. Ct. R. 31, § 2(i) (1995). In its 2001 amendments, the court replaced the term "dispute resolution neutral" with "Rule 31 Neutral." Tenn. S. Ct. R. 31, § 2(l).

[26]In its 2001 amendments to Tenn. S. Ct. R. 31, the Tennessee Supreme Court replaced the word "mediator" with the word "Neutral." Tenn. S. Ct. R. 31, Appendix A.

Joseph H. Paulk, *Why Mediation Works*, 36 Tulsa L.J. 861, 864 (2001). The United States Court of Appeals for the Second Circuit has explained succinctly why confidentiality is necessary:

> If participants cannot rely on the confidential treatment of everything that transpires during [mediation] sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements . . ., thereby expediting cases at a time when . . . judicial resources . . . are sorely taxed.

*Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979). Accordingly, a vast majority of the proponents of alternative dispute resolution view confidentiality of the proceedings as a central issue. *Sheldone v. Pennsylvania Turnpike Comm'n*, 104 F. Supp. 2d 511, 513-14 (W.D. Penn. 2000); Kimberlee K. Kovach, *Mediation: Principles and Practice* 3 (2d ed. 2000); Joshua J. Engelhart, Note, *Federal Mediation Privilege: Should Mediator Communications Be Protected From Subsequent Civil and Criminal Proceedings: In re Grand Jury Subpoena Dated December 17, 1996*, 1999 J. Disp. Resol. 73, 73 (1999); Kenneth R. Feinberg, *Mediation – A Preferred Method of Dispute Resolution*, 16 Pepp. L. Rev. S5, S29 (1989); Cheryl L. Baber, *Alternative Dispute Resolution In the Twenty-First Century: Alternative Dispute Resolution in the United States District Court for the Western District of Oklahoma*, 36 Tulsa L.J. 819, 832 (2001).

The Tennessee Supreme Court recognized the importance of confidentiality when it first authorized court-annexed alternative dispute resolution. Tenn. S. Ct. R. 31, § 6 (1995) required that a "mediator, settlement judge, or other dispute resolution neutral shall preserve and maintain the confidentiality of all alternative dispute resolution proceedings except where required by law to disclose the information."[27] The Tennessee Supreme Court issued the Standards of Professional Conduct for Rule 31 Mediators in September 1996 to "instill and promote public confidence in the [a]lternative [d]ispute [r]esolution process under Rule 31."[28] These standards reinforced the importance of confidentiality by stating that proceedings under Tenn. S. Ct. R. 31 were based on the

---

[27]The same provision appeared in the 1996 revision of Tenn. S. Ct. R. 31. However, the Tennessee Supreme Court removed the provision in the 2001 version of the rule. Tenn. S. Ct. R. 31, § 7 now provides that "[e]vidence of conduct or statements made in the course of Rule 31 ADR Proceedings and other proceedings conducted pursuant to an Order of Reference shall be inadmissible to the same extent as conduct or statements are inadmissible under Tenn. R. Evid. 408."

[28]Tenn. S. Ct. R. 31, Appendix A(1)(a) (1996). This provision now appears at Tenn. S. Ct. R. 31, Appendix A, § 1(a).

principles of "privacy and confidentiality"[29] and that "mediator[s] shall preserve and maintain the confidentiality of all mediation proceedings except where required by law to disclose information."[30]

The principles of self-determination, neutrality, and confidentiality influenced the Tennessee Supreme Court's view of the role trial judges should properly play in court-annexed alternative dispute resolution proceedings. While the court gave trial courts the authority to require litigants, with or without their consent, to participate in a case evaluation, mediation, or judicial settlement conference,[31] the court carefully limited the trial court's role in these proceedings. First, the court permitted trial judges to participate only in judicial settlement conferences. All other proceedings being presided over by a "neutral person" or a "neutral panel."[32] Secondly, with regard to judicial settlement conferences, the court stated clearly that judges presiding over a pending case could not also conduct the judicial settlement conference. The definition of "judicial settlement conference" makes it clear that these proceedings must be "conducted by a judicial officer other than the judge before whom the case will be tried."[33]

---

[29]Tenn. S. Ct. R. 31, Appendix A(1)(d)(4) (1996). This provision now appears at Tenn. S. Ct. R. 31, Appendix A, § 1(c)(4).

[30]Tenn. S. Ct. R. 31, Appendix A(7)(a) (1996). In its 2001 revision to the rule, the Tennessee Supreme Court replaced this language with the following: "A Neutral shall preserve and maintain the confidentiality of all dispute resolution proceedings except where required by law to disclose information." Tenn. S. Ct. R., Appendix A, § 7(a). The court also required that neutrals "[p]reserve and maintain the confidentiality of all information obtained during Rule 31 ADR Proceedings and shall not divulge information obtained by them during the course of Rule 31 ADR proceedings without the consent of the parties, except as otherwise may be required by law."

[31]Tenn. S. Ct. R. 31, § 3. This provision now appears at Tenn. S. Ct. R. 31, § 3(b).

[32]A judicial settlement conference is nothing more than mediation conducted by a "judicial officer." Tenn. S. Ct. R. 31, § 2(d) (1995). This definition now appears at Tenn. S. Ct. R. 31, § 2(e). Prior to 2001, all other Tenn. S. Ct. R. 31 alternative dispute resolution proceedings, case evaluations, mediations, mini-trials, non-binding arbitrations, and summary jury trials, were presided over by either a "neutral person" or a "neutral panel." While these terms were not defined, consideration of the entire text of Tenn. S. Ct. R. 31 clearly demonstrates that the court envisioned that "neutral persons" would include lawyers and non-lawyers who were not active judges. *See* Tenn. S. Ct. R. 31, § 5 (1996) (immunity of neutrals); Tenn. S. Ct. R. 31, §§ 7, 12(d) & Appendix A(9)(a) (1996) (compensation of neutrals); Tenn. S. Ct. R. 31, § 13 (1996) (qualification of neutrals); Tenn. S. Ct. R. 31, § 16 (1996) (pro bono requirements for neutrals); and Tenn. S. Ct. R. 31, Appendix A(12) (advertising by neutrals). These provisions now appear in Tenn. S. Ct. R. 31, §§ 8, 12, 13, 18(d), and Appendix A, § 9(a) & 12. However, Tenn. S. Ct. R. 31, §§ 21 and 22 now explicitly permit trial judges to conduct non-binding arbitration and case evaluation proceedings. Because similar language does not appear in Tenn. S. Ct. R. 31, §§ 23 and 24, neutral persons, not trial judges, must apparently still conduct mini-trials and summary jury trials.

[33]Tenn. S. Ct. R. 31, § 2(d). This provision now appears at Tenn. S. Ct. R. 31, § 2(e). However, in its 2001 revisions to Tenn. S. Ct. R. 31, the court, for the first time, permitted the judge to whom the case had been assigned for trial to conduct the judicial settlement conference with the parties' consent. Tenn. S. Ct. R. 31, § 20. The same may not hold true for non-binding arbitrations, case evaluations, mini-trials, or summary jury trials because Tenn. S. Ct. R. 31, §§ 21, 22, 23, and 24 do not contain similar language. Tenn. S. Ct. R. 31, § 20 does not apply to this case because the 2001 amendments to Tenn. S. Ct. R. 31 are prospective only and could not have applied to an already concluded mediation.

The policy reasons for not permitting the trial judge who could eventually try the case to preside over the mediation or other alternative dispute resolution procedure permitted by Tenn. S. Ct. R. 31 are evident and compelling. A judge who presides over a judicial settlement conference is not acting as a judge but as a neutral. *Environmental Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 540 (Tenn. Ct. App. 2000); *Moxham v. Crafton*, No. M2000-00803-COA-R3-CV, 2001 WL 468669, at *6 (Tenn. Ct. App. May 4, 2001) (No Tenn. R. App. P. 11 application filed). The success of the settlement "depends largely on the willingness of the parties to freely disclose their intentions, desires, and the strengths and weaknesses of their case" with the neutral. *Poly Software Int'l, Inc. v. Su*, 880 F. Supp. at 1494; *see also* Peter Demuth, *Theories for Protecting Mediation*, *reprinted in* Confidentiality in Mediation: A Practitioner's Guide 155-164 (American Bar Ass'n, 1985). Thus, a judge conducting a settlement conference becomes a confidant of the parties, *In re County of Los Angeles*, 223 F.3d 990, 993-94 (9th Cir. 2000), with whom the parties share information that would normally be shared only with their lawyers.

Generally, knowledge gained in a prior judicial proceeding is not a sufficient ground to require the recusal or disqualification of a trial judge in a later judicial proceeding. *Liteky v. United States*, 510 U.S. 540, 551, 114 S. Ct. 1147, 1155 (1994); *State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995); *Talley v. Talley*, 51 Tenn. App. 622, 633, 371 S.W.2d 152, 157 (1962). However, much of the information imparted during a mediation is not the sort of information that would normally be disclosed to the other parties or the court. Accordingly, should the judge who conducts the judicial settlement conference later be called upon to decide the issues of liability or damages, it is impossible to avoid questions as to whether he or she can disregard the matters disclosed during the conference or put aside any opinions or judgments already formed based on this information. *Timm v. Timm*, 487 A.2d 191, 193 (Conn. 1985); *Enterprise Leasing Co. v. Jones*, 789 So. 2d 964, 967 (Fla. 2001); *Hudson v. Hudson*, 600 So.2d 7, 8-9 (Fla. Dist. Ct. App. 1992); *Schellin v. North Chinook Irrigation Ass'n*, 848 P.2d 1043, 1045 (Mont. 1993); *Craig v. Walker*, 824 P.2d 1131, 1131-32 (Okla. 1992).[34]

The Tennessee Supreme Court recognized these confidentiality and predisposition concerns in its September 1996 revisions to Tenn. S. Ct. R. 31. The court added a provision to the rule stating:

> A person serving as a Rule 31 dispute resolution neutral in an alternative dispute resolution proceeding shall not participate as attorney, advisor, judge, guardian ad litem, master or in any other

---

[34]The bias problems flowing from permitting a trial court to be privy to mediation proceedings is dramatically illustrated by this court's recent decision vacating a $1,750,000 verdict because the trial court's comments indicated that it had not properly discharged its duty as thirteenth juror and that it was biased against one of the parties and its insurance company. The trial court, believing that a recalcitrant insurance company had declined to make a reasonable settlement offer, stated on the record that he had discussed the pretrial settlement conference with the judge who had conducted it and that the judge had stated that "[i]t was his feeling that had he been able to coerce a reasonable offer, that the plaintiff would have been coerced to take a reasonable offer." *Davidson v. Lindsey*, No. W2000-02891-COA-R3-CV, 2002 Tenn. App. LEXIS 344, at *14-15, 18 (Tenn. Ct. App. May 6, 2002) (Tenn. R. App. P. 11 application pending).

judicial or quasi-judicial capacity in the matter in which the alternative dispute resolution proceeding was conducted.

Tenn. S. Ct. R. 31, § 12(i) (1996). This provision now appears in Tenn. S. Ct. R. 31, § 10(c)(1).[35]

## B.

The "binding mediation" proceeding at issue in this case did not comply with Tenn. S. Ct. R. 31 as it stood in early 1999 in four fundamental particulars. First, Tenn. S. Ct. R. 31 did not authorize "binding mediation"[36] as a method for court-annexed alternative dispute resolution. *Harris v. Hall*, M2000-00784-COA-R3-CV, 2001 WL 1504893, at *4 (Tenn. Ct. App. Nov. 28, 2001) (No Tenn. R. App. P. 11 application filed). Second, the procedure actually used by the trial court bore no resemblance to a judicial settlement conference or mediation because the parties' decision-making rights were supplanted by the trial court, and there was no apparent effort to assist the parties in reaching their own voluntary settlement of their differences.[37] Third, the proceeding was conducted by the trial judge to whom the case had been assigned notwithstanding the clear requirement in Tenn. S. Ct. R. 31, § 2(d) that it be "conducted by a judicial officer other than the judge before whom the case will be tried." Fourth, the judge who conducted the alternative dispute resolution proceeding entered a final order disposing of the parties' claims even though it did not have the authority to do so. *Harris v. Hall*, 2001 WL 1504893, at *5; *Moxham v. Crafton*, 2001 WL 468669, at *6; *Environmental Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d at 540.

These departures are not just minor deviations from Tenn. S. Ct. R. 31. Each of them is inconsistent with one or more of the fundamental principles that impelled the Tennessee Supreme Court to authorize court-annexed alternative dispute resolution in the first place. They undermined the principles carefully designed to preserve the parties' right of self-determination. They also raised the specter of possible repercussions for the parties who objected to referring the case to alternative dispute resolution or who objected to its outcome. Accordingly, we have concluded that these deviations are substantive and material and that they affected the outcome of this proceeding.

A judgment is considered void if the record demonstrates that the court entering it lacked jurisdiction over either the subject matter or the person, or did not have the authority to make the

---

[35]Tenn. S. Ct. R. 31, § 10(c)(1) does not appear to apply to judicial settlement conferences in light of Tenn. S. Ct. R. 31, § 20 which permits trial courts, with the parties' agreement, to conduct judicial settlement conferences in cases they have been assigned to try.

[36]The notion of binding mediation is, in the words of one alternative dispute resolution expert, an "oxymoron." Wayne D. Brazil, *Comparing Structures For the Delivery of ADR Services by Courts: Critical Values and Concerns*, 14 Ohio St. J. on Disp. Resol. 715, 719 n.3 (1999); *see also*, McCoy, 26 U. Mem. L. Rev. at 989-990 (observing that ADR nomenclature is "frequently confusing" and occasionally "downright misleading").

[37]This court recently observed that a similar procedure amounting to nothing more than the ex parte reception of evidence is neither mediation or any other authorized form of alternative dispute resolution envisioned by Tenn. S. Ct. R. 31. *King v. King*, M2001-00275-COA-R3-CV, 2001 WL 2589131, at *3 n.2 (Tenn. Ct. App. Dec. 13, 2001) (No Tenn. R. App. P. 11 application filed).

challenged judgment. *Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996); *Luster v. Bargery*, 55 S.W.3d 548, 550 (Tenn. Ct. App. 2000). A void judgment lacks validity anywhere and is subject to attack from any angle. *State ex rel. Ragsdale v. Sandefur*, 215 Tenn. 690, 701, 389 S.W.2d 266, 271 (1965).

A trial court cannot exercise authority it has not been granted expressly or by necessary implication. *Southwest Williamson County Community Ass'n v. Saltsman*, 66 S.W.3d 872, 882 (Tenn. Ct. App. 2001). At the time of this proceeding, Tenn. S. Ct. R. 31 did not permit the judge who conducted the judicial settlement conference to enter an order disposing of the case. Accordingly, the order disposing of the parties' claims entered on March 19, 1999, by the judge who conducted the mediation was void, *Harris v. Hall*, 2001 WL 1504893, at *8, and the trial court erred when it declined to grant Intersound's Tenn. R. Civ. P. 59.04 motion.

## III.
### INTERSOUND'S WAIVER OF ITS OPPORTUNITY TO OBJECT TO "BINDING MEDIATION"

Team Design, Harris Graphics, and Mr. Gottlieb have declined to defend the March 19, 1999 order against Intersound's argument that the "binding mediation" proceeding was inconsistent with Tenn. S. Ct. R. 31. Instead, they assert that Intersound agreed to the procedure and, therefore, that Intersound waived its rights to insist on compliance with Tenn. S. Ct. R. 31. We find this argument without merit for two reasons. First, Tenn. S. Ct. R. 31, as it existed in early 1999, did not permit binding mediation before the same judge who would eventually try the case. Second, even if the parties could waive their compliance with Tenn. S. Ct. R. 31, the record does not demonstrate that Intersound knowingly and intelligently waived either compliance with Tenn. S. Ct. R. 31 or its fundamental right to insist on a judicial resolution of its dispute.

### A.

One of the most fundamental principles upon which our society is based is that all persons have a right to seek judicial redress for injuries or to protect rights and interests recognized elsewhere in the law. Like thirty-seven other states, Tennessee has preserved this right in its constitution. Thus, Tenn. Const. art. I, § 17 provides:

> That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay.

This provision traces its ancestry back to Magna Carta and shares common roots with the Law of the Land Clause in Tenn. Const. art. I, § 8. *Harrison, Pepper & Co. v. Willis*, 54 Tenn. (7 Heisk.) 35, 36 (1871); William C. Koch, Jr., *Reopening Tennessee's Open Courts Clause: A Historical Reconsideration of Article I, Section 17 of the Tennessee Constitution*, 27 U. Mem. L. Rev. 333, 350-

56 (1997). Thus, the right to a judicial remedy appropriately takes its place with the right to due process and the right to trial by jury in the foundation of our legal system.[38]

Tenn. Const. art. I, § 17 does not create new rights or causes of action but rather provides a judicial remedy for rights and interests recognized elsewhere in the law. It preserves the right of access to the courts. Accordingly, the Tennessee Supreme Court has explained that all persons have a remedy by due course of law to enforce their legal rights, *Harrison v. Henderson*, 54 Tenn. (7 Heisk.) 315, 338-39 (1872), and that the purpose of Tenn. Const. art. I, § 17 is to establish

> courts proceeding according to the course of the common law, or some system of well established judicature, to which all of the citizens of the state may resort for the enforcement of rights denied, or redress of wrongs done them.

*Staples v. Brown*, 113 Tenn. 639, 644, 85 S.W. 254, 255 (1905).

We must avoid placing court-annexed alternative dispute procedures on a collision course with the Tennessee Constitution by interpreting and applying Tenn. S. Ct. R. 31 consistently with Tenn. Const. art. I, § 17. *See State v. Burkhart*, 58 S.W.3d 694, 697-98 (Tenn. 2001) (holding that courts have a duty to construe a statute to avoid constitutional conflict); *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 529-30 (Tenn. 1993) (holding that the courts should adopt the plausible construction that avoids undermining the statute's constitutionality). We can accomplish this task by keeping in mind that both the Tennessee Supreme Court and its Commission on Dispute Resolution envisioned (1) that the proceedings authorized in Tenn. S. Ct. R. 31 should not be used to supplant a judicial remedy for parties who desire one and (2) that the outcome of these proceedings would not be final or binding without the parties' acquiescence. Accordingly, we conclude, as have the courts in other jurisdictions, that while the courts may require or compel the litigants to sit down and talk with each other, they cannot force them to resolve their differences using alternative dispute resolution in lieu of their judicial remedies. *See, e.g., Department of Transp. v. Atlanta*, 380 S.E.2d 265, 267 (Ga. 1989); *Derolph v. State*, 758 N.E.2d 1113, 1116 (Ohio 2001); *Decker v. Lindsay*, 824 S.W.2d 247, 250-51 (Tex. App. 1992); *Gates v. Gates*, 716 A.2d 794, 800 (Vt. 1998); *Gray v. Eggert*, 635 N.W.2d 667, 671 (Wis. Ct. App. 2001).

**B.**

The waiver argument advanced by Team Design, Harris Graphics, and Mr. Gottlieb presupposes that the rights being waived can, in fact, be waived. In judicial proceedings, unlike life, not everything is subject to negotiation. While litigants and their lawyers may waive certain personal rights, they may not waive elemental, structural attributes of judicial proceedings, particularly when the waiver affects the public's interest or contravenes public policy. *New York v.*

---

[38]Other courts have recognized the right of access to the courts as a fundamental right. *Aronson v. Kinsella*, 68 Cal. Rptr. 2d 305, 310 (Ct. App. 1997); *In re Lawsuits of Carter*, 510 S.E.2d 91, 93 (Ga. Ct. App. 1998); *Webb v. Haas*, 728 A.2d 1261, 1265 (Me. 1999); *Stevenson v. Reese*, 609 N.W.2d 195, 198 (Mich. Ct. App. 2000); *Clay v. Harrison Hills City Sch. Bd. of Educ.*, 723 N.E.2d 1149, 1153 (Ohio Ct. Com. Pl. 1999).

*Hill*, 528 U.S. 110, 116, 120 S. Ct. 659, 665 (2000). Circumstances arise when the courts must tell the litigants no, even if they have agreed to, or have even proposed, a particular course of proceeding. *Freytag v. Commissioner*, 501 U.S. 868, 896, 111 S. Ct. 2631, 2648 (1991) (Scalia, J., concurring).

The courts have declined to permit the parties to alter procedures in a number of circumstances. For example, the parties cannot agree to permit a trial court to try a case when it lacks subject matter jurisdiction.[39] They may not permit a general sessions court to adjudicate a damage claim greater than the court's monetary limits.[40] They may not agree to accept a quotient or gambling verdict.[41] They may not, in normal circumstances, agree to close a trial to the public or the press.[42] They cannot insist on being represented by a lawyer with an actual conflict of interest that impairs the lawyer's ability to conform to the ethical rules governing the profession.[43] Even if both litigants not only agree to, but themselves propose, these or other similar procedures, the courts must tell them no.

As we understand the dynamics of mediation, two of its essential attributes are (1) the fact that it is non-binding and (2) that it is conducted by a neutral person in whom the parties may appropriately confide information about their case that would otherwise not be disclosed to the other parties or the court. Conducting a mediation before the judge to whom the case has been assigned is inconsistent with these attributes and is contrary to Tenn. S. Ct. R. 31, § 2(c), (d). Tenn. S. Ct. R. 31, as it stood in early 1999, did not permit the parties to waive these requirements and did not permit courts conducting judicial settlement conferences to enter an order disposing of a case. *Harris v. Hall*, 2001 WL 1504893, at *5; *Moxham v. Crafton*, 2001 WL 468669, at *6; *Environmental Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d at 540. Accordingly, the parties could not confer authority on the trial court that it did not have under Tenn. S. Ct. R. 31.[44]

---

[39]*State ex rel. Dep't of Social Servs. v. Wright*, 736 S.W.2d 84, 85 n.2 (Tenn. 1987); *First Am. Trust Co. v. Franklin-Murray Dev. Co.*, 59 S.W.3d 135, 140 (Tenn. Ct. App. 2001).

[40]*Ware v. Meharry Med. Coll.*, 898 S.W.2d 181, 183-84 (Tenn. 1995); *Harris v. Hadden*, 75 Tenn. 214, 216 (1881).

[41]Quotient or gambling verdicts are not lawful in Tennessee. *State v. Cannon*, 661 S.W.2d 893, 898 (Tenn. Crim. App. 1983); *Mayor of Morristown v. Inman*, 47 Tenn. App. 685, 694-95, 342 S.W.2d 71, 76 (1960).

[42]*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, 100 S. Ct. 2814, 2829 (1980).

[43]*Wheat v. United States*, 486 U.S. 153, 162, 108 S. Ct. 1692, 1698-99 (1988).

[44]Rule 23.01(a) of the Local Rules of Practice for the Circuit Court, Chancery Court, Criminal Court and Probate Court of Davidson County ("Local Rule") permitted the judge or chancellor to whom a case had been assigned for trial to conduct a judicial settlement conference "when requested and agreed upon by the parties" or when the judge or chancellor deemed that the "exigencies of the case" required. However, local rules cannot conflict with applicable statutes or generally applicable rules issued by the Tennessee Supreme Court. *Hackman v. Harris*, 225 Tenn. 645, 651, 475 S.W.2d 175, 177 (1972); *Brown v. Daly*, 884 S.W.2d 121, 123-24 (Tenn. Ct. App. 1994); *Pettus v. Hurst*, 882 S.W.2d 783, 786 (Tenn. Ct. App. 1993). Thus, Local Rule 23.01(a) cannot confer authority on either the parties or the trial courts that has not already been conferred by state law or rule of the Tennessee Supreme Court.

## C.

Even though we have determined that in early 1999, litigants could not confer authority on trial courts to conduct binding mediation in cases assigned to them for trial, we have decided to address the procedural aspects of waiver or agreement in the context of Tenn. S. Ct. R. 31 for two reasons. First, the Tennessee Supreme Court could disagree with our conclusion that the 1999 version of Tenn. S. Ct. R. 31 did not permit the parties to empower trial courts to conduct binding mediation in cases assigned to them for trial. Second, the Tennessee Supreme Court could disagree with our conclusion that the 2001 amendments to Tenn. S. Ct. R. 31 do not apply retroactively to court-annexed alternative dispute resolution proceedings occurring prior to the effective date of the amendments.

While we are confident that our interpretation of the 1999 version of Tenn. S. Ct. R. 31 is fully supported by the language of the rule, we are less confident that it is consistent with the intentions behind the 2001 amendments to the rule. As we understand the current version of the rule, judicial settlement conferences remain non-binding, but the trial judge to whom the case has been assigned for trial may now conduct the conference with the parties' consent.[45] Likewise, trial courts may now conduct non-binding arbitrations and case evaluations but not in cases assigned to them for trial.[46] In addition, the 2001 amendments appear to permit the parties to agree that an arbitrator's award in a "non-binding arbitration" proceeding will be "final and binding."[47]

## 1.

The parties' agreement to make the outcome of a Tenn. S. Ct. R. 31 alternative dispute resolution proceeding final and binding affects their fundamental right of access to the courts. Thus, because very important rights are at stake, the courts should strive to ensure that any agreement terminating the litigation is actually the parties' agreement and that the parties made their decision knowingly, voluntarily, and intelligently. This can best be accomplished by requiring express waivers of the right of access to the courts and of the parties' other rights under Tenn. S. Ct. R. 31.[48]

---

[45]Tenn. S. Ct. R. 31. §§ 2(e), 20.

[46]The current rule does not appear to permit trial courts to conduct mini-trials or summary jury trials because Tenn. S. Ct. R. 31, §§ 23 and 24 do not contain the same language empowering trial courts to conduct these proceedings that is found in Tenn. S. Ct. R. 31, §§ 21 and 22. These proceedings must still be conducted by neutral persons. In addition, Tenn. S. Ct. R. 31, §§ 23 and 24 do not contain language similar to that found in Tenn. S. Ct. R. 31, § 20 permitting a trial court to whom a case has been assigned for trial to also conduct the alternative dispute resolution proceeding.

[47]Tenn. S. Ct. R. 31, Appendix B, ¶ 15. It is unclear whether parties who agree that the award in an arbitration proceeding under Tenn. S. Ct. R. 31, § 21 will be final and binding have any of the limited rights to judicial review available under the Uniform Arbitration Act. *See* Tenn. Code Ann. §§ 29-5-313 & -314.

[48]An express waiver, in contrast to an implied waiver or estoppel, includes an explicit declaration or acts and declarations manifesting an intent and purpose not to claim the supposed advantage. *Reed v. Washington County Bd.*
(continued...)

The courts should not presume that parties have waived their fundamental constitutional rights. *State v. Blackmon*, 984 S.W.2d 589, 591 (Tenn. 1998); *State ex rel. Anglin v. Mitchell*, 575 S.W.2d 284, 289 (Tenn. 1979). Thus, a finding of waiver of a fundamental right cannot be based on a silent record. *State v. Muse*, 967 S.W.2d 764, 767-68 (Tenn. 1998); *House v. State*, 911 S.W.2d 705, 714 n.20 (Tenn. 1995). For the waiver of a fundamental constitutional right to be effective, the record must contain evidence of an intentional relinquishment of a known right or privilege either in writing or on the record in open court. *Momon v. State*, 18 S.W.3d 152, 162 (Tenn. 1999). If the right involved is personal to the party, it must be waived by the party personally. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312 (1983); *Momon v. State*, 18 S.W.3d at 161; *State v. Far*, 51 S.W.3d 222, 228 (Tenn. Crim. App. 2001).[49]

To assure that a waiver of the fundamental right of access to the courts is knowing, voluntary, and intelligent, the record must demonstrate, at a minimum, that parties agreeing to make the outcome of a Tenn. S. Ct. R. 31 alternative dispute resolution procedure final and binding know and understand: (1) that they have a right to insist that the Tenn. S. Ct. R. 31 proceeding be non-binding, (2) that they have a right to a judicial remedy if the Tenn. S. Ct. R. 31 proceeding is unsuccessful, (3) that they may reject the outcome of a non-binding Tenn. S. Ct. R. 31 proceeding without fear of reprisal, (4) that they understand that by agreeing to make the outcome of the proceeding final and binding they are waiving their right to have their dispute adjudicated by a court and that they are limiting their right to have the outcome of the proceeding reviewed by a court, (5) that they have consulted with their lawyers in making the decision whether or not to waive the right of access to the courts or their rights under Tenn. S. Ct. R. 31 and that their lawyers have fully advised them of the advantages and disadvantages of waiving their rights, and (6) that they voluntarily and personally waive these rights. If a judicial settlement conference is to be presided over by the judge to whom the case has been assigned for trial, the parties must also expressly waive their right to have the conference conducted by a judicial officer other than the judge to whom the case has been assigned for trial.

**2.**

The record in this case does not contain a transcript of any of the proceedings before the trial court. The after-the-fact affidavits submitted by the parties' lawyers regarding what transpired at these proceedings conflict and are inadequate substitutes for a written agreement or transcript. The only document referring the case to alternative dispute resolution is the February 16, 1999 order referring the case to "binding mediation." However, this order is substantively deficient for four reasons. First, it refers only to "binding mediation" – an inherently ambiguous term that is not

---

[48](...continued)
*of Educ.*, 756 S.W.2d 250, 255 (Tenn. 1988).

[49]The local rules of practice for the courts of record in Davidson County require the parties' personal waiver with regard to agreed summary trials. Local Rule 24.01(a) requires the submission of an agreed order that serves as the parties' "certification that a written agreement has been entered into and signed by the parties and their counsel acknowledging that they understand that the case is being handled under this expedited format." *See also* Local Rules, Appendix of Forms, "(Sample) Rule 24. Agreement" and "(Sample) Agreed Order" (documents requiring the signature of both the parties and their lawyers).

defined in the order itself or in Tenn. S. Ct. R. 31. Second, it does not state that it is an agreed order. Third, it does not expressly state that the parties have personally agreed to forego their right to a trial or to insist that the proceeding be conducted by a judge other than the judge to whom the case had been assigned for trial. Fourth, the order is not signed by all the parties and their lawyers.

Measured against these standards, the record in this case does not contain sufficient evidence to support concluding that Intersound personally and knowingly waived its right to a trial should the outcome of the mediation prove unsatisfactory. Accordingly, the trial court erred when it denied Intersound's motion to alter or amend its March 19, 1999 order finally disposing of the parties' claims.

## IV.

We vacate the March 19, 1999 and April 29, 1999 orders and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs to Team Design; Harris Graphics, Inc.; Anthony Gottlieb; and Intersound Entertainment, Inc. and its surety for which execution, if necessary, may issue.

 

_____
WILLIAM C. KOCH, JR., JUDGE