IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 16, 2004 Session

## RON SEARCY, D/B/A RESTORATION CONTRACTORS v. JOHN HEROLD

**Appeal from the Circuit Court for Sumner County**
**No. 23960-C     C.L. Rogers, Judge**

**No. M2003-02037-COA-R3-CV  - Filed September 28, 2005**

This appeal involves a dispute between a homeowner and a contractor over the validity of an arbitration award. After the arbitrator awarded the contractor $52,725, the contractor filed a complaint in the Circuit Court for Sumner County to confirm the award and to recover the costs of the arbitration. The homeowner challenged the award on the ground that he had not been afforded a hearing. The contractor filed a motion for summary judgment, a motion to dismiss the homeowner's counterclaim, and a motion for attorney's fees under the arbitration agreement. The trial court, granting the contractor's motions, confirmed the $52,725 arbitration decision and awarded the contractor $500 in arbitration expenses and $2,205 in attorney's fees. The homeowner has appealed. We have determined that the arbitration award must be vacated because of the arbitrator's failure to provide the parties a hearing before rendering his decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., joined.

Michael W. Edwards and Russell E. Edwards, Hendersonville, Tennessee, for the appellant, John Herold.

Paula Ogle Blair, Nashville, Tennessee, for the appellee, Ron Searcy.

**OPINION**

**I.**

On January 26, 1999, John Herold hired Ron Searcy, doing business as Restoration Contractors, to perform extensive repairs on his residence in Hendersonville, Tennessee. The total cost of the work was $227,664. The parties embodied their agreement in a written contract drafted by Mr. Herold, who is not a lawyer. The contract contained an arbitration provision in the event that disputes arose regarding the performance of the contract. This provision stated:

In the event contractor and owner cannot agree to the quality of workmanship, money owed to either party, or any other matter pertaining to this contract, either party must notify the other party by certified or registered mail of their desire to settle any disputes by way of binding arbitration. All costs of binding arbitration shall be paid by the losing party. Binding arbitration shall consist of each party selecting a representative with a construction background, notifying the other party of their representatives [sic] name and experience and then those representatives selecting an attorney at law who shall act as a referee and who's [sic] written decisions shall be final and bind both parties. The written decision must be in fourteen days.

Sometime during 2000, a dispute arose regarding the performance of the work. Mr. Herold was apparently displeased with a "bowed" wall and with delays in completing the work. Accordingly, he insisted that he was entitled to offsets from the contract price for delay damages and the cost of repairing the defective wall. Mr. Herold also insisted that he was entitled to a credit for the overhead and profit that had been allocated to an item that had been deleted from the contract. Mr. Searcy declined to give Mr. Herold these credits or deductions.

Accordingly, following the "Settlement of Disputes" clause in their contract, both parties chose representatives for the arbitration, and these representatives selected John M. Cannon, a Goodlettsville lawyer, to arbitrate the dispute. On December 5, 2002, Mr. Searcy agreed in writing to the selection of Mr. Cannon as the arbitrator and also agreed to be bound by Mr. Cannon's decision. Mr. Herold signed a similar agreement on December 18, 2002.

Both parties' representatives submitted documents regarding their positions. On January 9, 2003, Mr. Herold emailed Mr. Cannon complaining that he was having problems communicating with his own representative[1] and inquiring when the arbitration hearing would be held. Mr. Cannon responded on the same day that he had understood that "no testimony . . . [would] be given" but that he would receive testimony from the parties if agreed to by Messrs. Herold and Searcy. Mr. Cannon also invited Mr. Herold to submit any further documentation he wished and stated that he would "suspend review of the material until you advise if there is anything you wish for me to review as well."

As far as this record shows, Mr. Herold never responded to Mr. Cannon's email. He submitted no additional records, nor did he notify Mr. Cannon that he and Mr. Searcy desired an opportunity to present testimony in addition to the documentation they had already provided. After waiting for nineteen days, and mindful that the agreement required a written decision in fourteen days, Mr. Cannon prepared and mailed a letter to Messrs. Herold and Searcy on January 28, 2003

---

[1]Mr. Herold stated that he had "failing trust" in his representative. He complained specifically that he did not know what materials his representative had provided to Mr. Cannon, that his representative was "working both sides of the street," and that he was "kept blind to the arbitration process by rules I don't understand." Of course, it was Mr. Herold himself who devised the rules for this arbitration.

concluding that Mr. Herold owed Mr. Searcy $52,725, as well as $500 in arbitration costs. He concluded his letter with the following: "[T]his ruling becomes a binding award and may be enforced in a court of competent jurisdiction if not paid, plus court costs and attorney's fees as provided in the parties [sic] contract."

Mr. Herold declined to honor the arbitration award. On March 14, 2003, Mr. Searcy filed suit in the Circuit Court for Sumner County seeking confirmation and enforcement of the arbitration award. Mr. Herold retained counsel, and filed an answer and counterclaim seeking to vacate the arbitration award because he had been denied a hearing during the arbitration process. Mr. Searcy responded to the counterclaim by filing a motion for summary judgment and a motion to dismiss Mr. Herold's counterclaim. The trial court granted both of Mr. Searcy's motions and dismissed Mr. Herold's complaint. Later, the trial court also awarded Mr. Searcy a judgment for his legal expenses. Mr. Herold perfected this appeal.

## II.
### MR. HEROLD'S RIGHT TO A HEARING UNDER TENN. CODE ANN. § 29-5-306 (2000)

Mr. Herold's principal argument on this appeal is that the trial court erred by declining to vacate the arbitration award because Mr. Cannon had not conducted a hearing before rendering his decision. Thus, the first question we must address is whether the parties were entitled to a hearing before Mr. Cannon could have rendered his decision. The answer to this question is found in the inter-relationship between the arbitration clause Mr. Herold drafted and the statues governing arbitration procedures.

The debacle in which the parties find themselves is primarily due to the poorly drafted arbitration clause prepared by Mr. Herold. It is materially deficient in many respects. For example, it is completely silent regarding the process that will occur between the time the parties' representatives appoint the arbitrator and the time the arbitrator renders a decision. There is no specific mention of a hearing of any sort. This oversight is somewhat curious, especially in light of Mr. Herold's after-the-fact protestations regarding the critical importance of a hearing.

Parties who agree to arbitrate their disputes may agree upon virtually any procedure they desire. *Team Design v. Gottlieb*, 104 S.W.3d 512, 517-18 (Tenn. Ct. App. 2002). State law does not provide that hearings are indispensable to arbitrations. Therefore, parties may agree to use an arbitration process that dispenses with live testimony or a hearing entirely. However, when parties have not waived a hearing or the presentation of live testimony or have not provided for a specific arbitration procedure that does not envision a hearing, Tenn. Code Ann. § 29-5-306 contains the hearing procedure that must be followed.

The first question we must address is whether Messrs. Herold and Searcy waived the statutory default hearing provided in Tenn. Code Ann. § 29-5-306 or whether they provided for another hearing procedure that dispensed with a hearing or submission of testimony. The arbitration clause in their contract contains no mention of a hearing. However, simply failing to provide for a hearing in an arbitration clause does not amount to a waiver of a hearing because Tenn. Code Ann. § 29-5-306 requires that the waiver must be "otherwise provided by the agreement." Accordingly,

the hearing process contained in Tenn. Code Ann. § 29-5-306 can only be waived in writing – that is, the parties' agreement must "otherwise provide" that the arbitration will not involve a hearing.

The parties may explicitly waive a hearing, and an explicit waiver is the most preferable and reliable way to dispense with a hearing during an arbitration. However, in addition to an explicit waiver, parties may dispense with a hearing by agreeing on a specific arbitration procedure that plainly does not envision that a hearing will be held. For example, parties could agree upon an arbitration clause stating (1) that they will select an arbitrator, (2) that they will submit their arguments and supporting evidence to the arbitrator in writing, and (3) that the arbitrator will base the decision on the written submissions. This procedure clearly does not envision live testimony or a hearing, and thus the parties agreeing to this process have "otherwise provided" and will not be required to adhere to the hearing procedures in Tenn. Code Ann. § 29-5-306.

The arbitration clause drafted by Mr. Herold does not explicitly waive a hearing or the presentation of live testimony. Likewise, it contains no procedures for conducting the arbitration itself. It addresses only the appointment of the parties' representatives, the selection of an arbitrator, and the time within which a written decision must be rendered.[2] As a practical matter, the parties' arbitration clause does not contain an arbitration procedure that "otherwise provides." This agreement is so incomplete that we cannot construe it to effectively dispense with the hearing procedure required by Tenn. Code Ann. § 29-5-306. Accordingly, the arbitration in this matter should have been conducted in accordance with the procedure set out in Tenn. Code Ann. § 29-5-306.

### III.
### MR. HEROLD'S ENTITLEMENT TO RELIEF

The courts' power to grant relief from arbitration awards is statutorily limited. *Millsaps v. Robertson-Vaughn Constr. Co.*, 970 S.W.2d 477, 480 (Tenn. Ct. App. 1997). Tenn. Code Ann. § 29-5-313 (2000) identifies five circumstances in which a court may vacate an arbitration award, and the courts may not vacate an arbitration award on any other ground. Parties seeking to vacate an arbitration award must apply to the court within ninety days after the delivery of the award. Tenn. Code Ann. § 29-5-313(b).

Mr. Herold filed an answer and counterclaim in this case on March 26, 2003 – fifty-five days following his receipt of Mr. Cannon's January 28, 2003 letter containing his arbitration decision. In his counterclaim, he asserted that Mr. Cannon's failure to hold a hearing before rendering his decision substantially prejudiced his rights. This counterclaim suffices as an application to vacate the arbitration award, and it was filed within the time limit imposed by Tenn. Code Ann. § 29-5-313(b).

Mr. Herold's assertion that he was deprived of a hearing tracks one of the grounds upon which an arbitration award may be vacated. Tenn. Code Ann. § 29-5-313(a)(4) permits the courts

---

[2] The provision regarding when the written decision must be rendered is ambiguous. While the clause requires the decision to be rendered in fourteen days, it does not state when the fourteen day period begins to run.

to vacate an arbitration award when the arbitrator has "conducted the hearing, contrary to the provisions of § 29-5-306, as to prejudice substantially the rights of a party. . . ." In light of our conclusion in Section II that the arbitration clause in the parties' contract did not effectively waive their right to a hearing conducted in accordance with Tenn. Code Ann. § 29-5-306, Mr. Herold has grounds for vacating the arbitration award if his rights were substantially prejudiced.

We find that Mr. Herold's right to an arbitration hearing was substantially prejudiced under the facts of this case. After Mr. Herold pressed the issue of a hearing with Mr. Cannon, Mr. Cannon responded (1) that he would conduct a hearing if Messrs. Herold and Searcy wanted one and (2) that he would "suspend review of the material until you advise if there is anything you wish for me to review as well." Notwithstanding his representation that he would "suspend review of the material" until he heard from Mr. Herold, Mr. Cannon proceeded to consider the material and make an award before Mr. Herold communicated with him or before notifying Messrs. Herold and Searcy that he was prepared to make an arbitration award based on the materials already submitted. Mr. Cannon's failure to provide the parties with timely notice of his intention to proceed calls into question the fundamental fairness of the arbitration proceeding.

We take little satisfaction in granting relief to a party who chooses to draft his own ambiguously worded contract and then does so little to further his own legal interests when a conflict arises under that contract. Mr. Herold's failure to respond both to Mr. Cannon's request for additional information and to the suggestion that he discuss the hearing with Mr. Searcy make it difficult for us to view Mr. Herold as a victim of anything other than his own neglect. Furthermore, Mr. Herold has provided this court with no indication as to what, if any, additional evidence or testimony he might present in the hearing that he requests. Finally, the record contains no evidence that Mr. Herold expressed any objection to the arbitration award prior to his answer to Mr. Searcy's petition for confirmation of the award.

Nevertheless, the law entitles Mr. Herold to be heard, to present evidence, and to cross-examine witnesses, and Mr. Cannon's decision to forego a hearing seems to be without any reasonable basis. This court is not prepared to deny Mr. Herold's legal right on the basis of exasperation or prognostications regarding the probable outcome of such a hearing.

## IV.

The orders granting Mr. Searcy's motion to dismiss, motion for summary judgment, and motion for attorney's fees are vacated, and the case is remanded to the trial court with directions to enter an order directing the parties to conduct another arbitration before a new arbitrator in accordance with their contract as construed by this court. We tax the costs of this appeal in equal proportions to Ron Searcy and to John Herold and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.